[No. 8510.]

MILNER v. ESKRIDGE.

1. SUBROGATION—*Of Surety Paying Note to Collateral Held by Payee.* The surety in a promissory note pays the amount thereof to the payee. He is entitled to the collateral securities held by the payee.

2. PRINCIPAL AND SURETY—*Co-Sureties—Duties Inter Se.* One of

several sureties in a promissory note makes payment thereof, receiving the collateral securities held by the payee to secure its payment. He holds such collateral securities for the common benefit of himself and his several co-sureties, and by surrendering the collateral to the principal debtor, he loses all right to contribution from his co-sureties, either at law or in equity.

Milner, Eskridge and two others executed a promissory note to a bank, as sureties to the American Ink Company. Milner and the other two then executed their promissory note to Eskridge, upon which was endorsed a certificate that it was given "to indemnify" Eskridge on account of endorsing the note to the bank. Eskridge having paid the note at the bank received certain collateral securities pledged by the Ink Company, and without the knowledge of Milner surrendered these securities to that company. *Held*, he had thereby lost his action against Milner upon the second note.

3. NOTICE—*Presumptions.* Where the circumstances put one upon inquiry he is presumed to know whatever he might have learned by diligent inquiry.

4. EVIDENCE—*Presumptions.* Accounts aggregating a specified sum were pledged to secure payment of a promissory note. *Held*, it was to be presumed they were worth the amount named, and one of several sureties in the note having acquired them, and surrendered them to the principal debtor, without the consent of his co-sureties, had the burden of dispelling this presumption.

*Error to Denver District Court.* Hon. JOHN H. DENISON, Judge.

*Department.*

Messrs. MORRISON & DESOTO and Mr. A. R. MORRISON, for plaintiff in error.

Mr. CHARLES D. HAYT, JR., for defendant in error.

Opinion by Mr. JUSTICE TELLER.

The plaintiff in error, with one Bacon and one Edgerton, was defendant in an action by defendant in error to recover upon a promissory note executed by them to the order of Eskridge.

The note bore the following endorsement:

"This note is given to protect and indemnify L. D. Eskridge on account of endorsing notes of American Ink

Company for fifteen hundred dollars, dated the 6th day of March, 1913, to the Hamilton National Bank, in case of non-payment. And this note becomes null and void after payment thereof.

I do hereby accept and agree to the above conditions. L. D. Eskridge.''

The note, to which reference is made in said endorsement, was signed by the Ink Company, ''by L. D. Eskridge, President'', and by Eskridge and the three defendants in this suit. It reads as follows:

''$1,500.        Denver, Colo., March 6, 1913.

''Sixty days after date, for value received, we promise to pay to the order of the Hamilton National Bank, Denver, Colo., Fifteen Hundred Dollars, at the office of the Hamilton National Bank, Denver, Colorado, with interest at the rate of 8 per cent per annum from date until paid; and, having deposited with said bank as collateral security for the payment of this debt, and of all other indebtedness of the undersigned to said bank, contracted or to be contracted, and due or to become due, assignments of accounts receivable, aggregating $2,794.93, and 3000 shares of the treasury stock of the American Ink Company, to be placed in escrow with the Hamilton National Bank, proceeds of sale of same to apply on this note; do hereby authorize said bank, by its agents or attorneys, to sell said collateral, or any part thereof, or any substitute therefor or additions thereto, at public or private sale, or at any brokers' board, at the option of said bank, when this or any other indebtedness of the undersigned to said bank becomes due and payable, and without notice of intention to sell, or of the time or place of sale, and without demand for the payment of this note or of any indebtedness of the undersigned to said bank.''

This note, when due, was paid by Eskridge, and the bank delivered to him, or to the attorney for the Ink Company, the stock which had been deposited with it. The accounts mentioned in the note were given to the attorney for the company, and by him turned over to the company. There was no assignment of the accounts to the bank, but a list of said accounts was deposited with the note.

Eskridge and Edgerton were directors of the Ink Company, and Bacon had a contract with the company to buy a part of its capital stock.

Milner had no interest in the company, and signed the notes as an accommodation maker. The proceeds of the principal note went into the treasury of the company.

The defense was that the defendants were accommodation makers; that they signed the notes at plaintiff's request; that they were induced to sign, solely because of the collateral which, it is alleged, was deposited with the bank; that plaintiff received all the collateral, and, without the consent or knowledge of defendants, surrendered it to the company. The answer further alleged that the collateral was ample to pay the note; that defendants Edgerton and Milner offered to pay the note, if plaintiff would surrender to them said collateral; that, since said offer was made, the collateral had become worthless; and that plaintiff had put it out of his power to surrender the collateral to said defendants.

There was admitted in evidence, over the objection of defendants, a contract between the company and Bacon for the sale of the stock, which provided for a deposit in escrow with the bank of thirty thousand shares of the stock to be delivered to Bacon, as he made payment therefor. This contract was dated March 7, 1913,

one day later than the date of the two notes. Milner had no knowledge of this contract.

The court found that the note in suit was secured by Bacon's interest in the 3,000 shares, which were pledged, and that, when Bacon lost his option on the stock, the stock was properly delivered to the company. The court expressed the belief that Milner and Edgerton would be entitled to the accounts, and 300 shares of the stock, which were regarded as paid for by Bacon with the $1,500 obtained from the bank on the note. The court was at first of the opinion that Milner was entitled to a judgment in his favor, but later held that Milner was bound to know the proper construction of the note, which was as the court had announced: i. e., that only Bacon's interest in the stock was up as security. Nothing was said by the court as to defendants' defense of loss by the surrender of the accounts of the company.

This writ of error is prosecuted by Milner alone, and in his behalf it is contended that, as he was in law a surety for the payment of the original debt, he was entitled to have the security applied to the payment of the debt before he could be called upon to pay. Defendant in error claims that the principal note was Bacon's note, and not that of the Ink Company, but the evidence does not support him. As between Bacon and Eskridge, it may have been the former's note, but the bank and Milner both regarded it as a company obligation. When Eskridge paid the note, as surety, and not for the company, he was entitled to be subrogated to the bank's interest in the collateral; and he would hold such securities for the benefit of the makers of the indemnity note.

When he surrendered the securities to the Ink Company, he violated his implied contract with the sureties.

Defendant in error, however, says that the accounts were never deposited, and that all but 300 shares of the

stock were held by the bank, not as security for the note, but under the escrow contract between Bacon and the company; and, as, to the latter part of the proposition, the trial court agreed with him. When it is remembered that Milner had no interest in, and little knowledge of, the transaction in which the note was given, and that his undisputed testimony shows that, when he signed the note, Eskridge, as well as Bacon, said it was to be secured by 3,000 shares of stock, and some $2,800 worth of signed orders for goods, that Eskridge asked him to sign the note, and that, but for the fact that it was secured, or to be secured, by collateral, he would not, as he testifies, have signed it, we are unable to see how the trial court could find that Milner was bound to know that the stock was held, not as collateral, but as an escrow. The officer of the bank, who handled the loan, testified that the stock was to be placed in "escrow, and as collateral;" and the attorney, for the company, testified that, when, on Bacon's failure to take the stock as per contract, demand was made on the bank for the stock, it was refused on the ground that 3,000 shares were held to secure the note. Those shares were held until the note was paid. Bacon, also, testified that: "it was specifically understood between Eskridge and my co-defendants that the stock was put up as collateral. Eskridge, as president, was in a position to use it so long as he did nothing to prevent the consummation of the contract."

The only testimony to the contrary is that of Eskridge who testified, not as to what was said or done in relation to the stock, but only as to his understanding of the arrangement. He nowhere denies Milner's testimony that he said the stock was up, or was to be put up, to secure the note. Perhaps, however, it is not important to consider the evidence on this point, since the trial

court's finding is based upon a construction of the language of the note; but, if the bank and Bacon construed the language as constituting the transaction of a deposit of collateral, it can hardly be said that Milner, who knew nothing of the escrow agreement, should have known that the stock was not up as collateral. It would seem, moreover, that the plaintiff, who told defendant Milner that the stock would be put up to secure the note, thereby construing the language in question as so meaning, ought not now to be allowed to claim for it a different meaning.

When the circumstances are such as, in law, put a person on inquiry, he is presumed to know that which he would have learned by inquiry at the proper sources of information. If it be conceded that the use of the word "escrow" on the note put Milner on inquiry as to it, there is still no justification for holding that he had knowledge that the 3,000 shares were not deposited as collateral. The parties to the escrow were the bank, the Ink Company, and Bacon. Had Milner asked at the bank, he would have learned that the stock was held as collateral, because the bank so claimed it. He was not called upon to ask either Bacon or Eskridge, who represented the company, since they had both told him it was up as security to the notes; but had he done so, he would undoubtedly have obtained only a repetition of their statements.

Counsel for defendant in error devotes a considerable portion of his brief to the evidence in regard to the escrow contract, but, as we view the case, that question is not necessary to be considered in determining the liability of Milner on the other note. The recitals of the note bind one who induced Milner to sign in ignorance of any misstatements therein. It is not apparent how the escrow contract could throw any light on the issue here

presented, until at least notice of its existence was brought home to Milner.

For the purposes of this case the security named in the note must be regarded as put up with the bank. Any other position would be a recognition of a right on the part of Eskridge to secure the use of Milner's credit, on representation of a state of facts which he is at liberty subsequently to repudiate and deny.

We do not think the finding of the court was justified by the evidence so far as Milner is concerned.

If, then, the stock and accounts were up as collateral, did their surrender by Eskridge release the plaintiff in error?

The law is well settled that, when the holder of a note has security therefor, an indorser or surety will be discharged if the security is surrendered by the holder. 7 Cyc. 1046.

Where one of several sureties holds security to indemnify them against loss, it is his duty to enforce it for the benefit of all the sureties. Failing to do so, and the securities being lost, he loses his right to call upon a co-surety for contribution. *Frink v. Peabody*, 26 Ill. App. 390; Colebrook on Collateral Securities, 2nd Ed., Sec. 114.

Such defense is good in law as well as in equity. *Brown v. First Nat. Bk.*, 112 Fed. 901, 50 C. C. A. 602, 56 L. R. A. 876; *Bank v. Colcord*, 15 N. H. 119, 41 Am. Dec. 685; *Rogers v. Trustees*, 46 Ill. 429.

It is evident, and the trial court so ruled, that, if Milner paid the note in suit, he would be subrogated to the payee's interest in all the securities held by him as collateral to the note. We have already seen that, when Eskridge paid the principal note, he became entitled to the security held by the bank, and, being only one of the sureties on that note, he received and held the security

for the benefit of his co-sureties. He became their trustee, and must faithfully hold the securities as such. Colebrook on Coll. Securities, 2nd Ed., Sec. 239. He cannot surrender them, without the consent of his co-sureties; a surrender, without such consent, is a fraud on the others. *Paulin v. Kaighn,* 29 N. J. L. 480. He had no right, therefore, to surrender the security, and, if he did so, he released his co-sureties to the extent of the value of such security.

The holding of the trial court that the defendants would be entitled to the security, if they paid the note, is a recognition of their interest in the security. In equity, the payment of the second note is but paying the original debt which the second note was given to secure. The original debt is continued in force for the purpose of permitting the surety to avail himself of such security as has been given by the principal debtor. *Fitch v. Hammer,* 17 Colo. 591, 31 Pac. 336.

The note recited that accounts aggregating $2,794.93 had been deposited as collateral, and Edgerton testified that they were worth between $1,800 and $2,000, while Bacon testified to a belief that over $1,000 had been collected on them by the company. But, aside from all evidence of their value, since they had been put up as collateral, it is presumed that they are worth the amount named, and "the holder, who surrendered them, assumes the burden of showing that they were of less value." *Paulin v. Kaighn, supra.* That case presents the same question as is here involved, and the surrender by two of the sureties, of collateral in which another surety was entitled to share, was held to have released him. There, too, the securities were surrendered by sureties for the debt of a company of which they were directors. The court points out that the surrender of the securities to the company was for the benefit of its members, includ-

ing the two sureties, and not at all for the benefit of the other surety, exactly as in this case, and adds that: "by every principle of justice, propriety, and common-sense, as well as by numerous well considered and carefully adjudged authorities, they should not be permitted to compel this defendant to contribute to the payment of the bond."

Even if the trial court had been right as to the 3,000 shares of stock, there would still remain this defense as to the accounts which were turned back to the company.

The justice of the rule above announced is emphasized in this case by the fact that this plaintiff in error offered to pay the note if the security were turned over to him. He so stated in his affidavit, which is the record, and Bacon testified that he heard the offer made. Eskridge did not deny that the offer was made.

The doctrine of contribution between sureties rests on principles of equity, and will be applied, only when it accords with justice.

To allow defendant in error, who induced, or aided in inducing, the plaintiff in error to lend his credit to the other signers of the note, which recited a deposit of accounts, and, also, that stock was to be put up as collateral, to recover on the note thus signed, after having turned back the security to the company for its and his benefit, would be rank injustice.

We are of the opinion that the court erred in holding plaintiff in error liable, and the judgment is accordingly reversed and remanded for further proceedings in harmony with the views above expressed.

*Judgment reversed.*

CHIEF JUSTICE WHITE and Mr. JUSTICE HILL concur.

Decided February 5, A. D. 1917. Rehearing denied April 2, A. D. 1917.