**Robert E. SIMPSON, Plaintiff-Appellant,**

v.

**Bernice MILNE, Defendant-Appellee.**

**No. 82CA0298.**

Colorado Court of Appeals,
Div. I.

Aug. 4, 1983.

Rehearing Denied Aug. 25, 1983.

Certiorari Denied Feb. 6, 1984.

Thomas J. Barton, Colorado Springs, for plaintiff-appellant.

Peter M. Susemihl, Colorado Springs, for defendant-appellee.

ENOCH, Chief Judge.

Plaintiff, Robert E. Simpson, appeals the trial court's judgment as to each of three promissory notes which plaintiff sought to enforce against defendant Bernice I. Milne. We affirm.

Except for the common relationship between the parties, the notes have distinct factual bases, and the legal issues raised as to each note on this appeal are unrelated; therefore, each note will be discussed separately.

### I. The Carmean Note

Plaintiff sued defendant on a demand note for $13,996.80, originally payable to Dale Carmean, but subsequently purchased by plaintiff and endorsed to him by Carme-an. This note contained a statement that it was "in lieu of note for $12,960.00 dated January 2, 1978." The signature of William Milne, who is defendant's husband and who is not a party to this suit, appears on the note, as does a signature purported to be that of defendant. At trial, there was testimony that only Mr. Milne had signed the original note and that Carmean had refused to issue a new note without the addition of defendant's signature. Defendant testified that, although the signature looked like hers, it was not her signature and she had not signed that note. The trial court concluded that "plaintiff has not proven by a preponderance of the evidence that defendant signed the promissory note payable to Dale Carmean."

Plaintiff contends that the trial court's conclusion was contrary to the weight of evidence. We disagree.

The authenticity of the signature was a question within the province of the finder of fact, and will not be disturbed on review unless clearly erroneous. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979). The record before us contains sufficient evidence to support the trial court's judgment for defendant on this claim.

### II. The Two $30,000 Notes

Plaintiff advances several objections to the trial court's judgment for defendant on the two $30,000 notes. For the reasons stated below we disagree with each of plaintiff's assignments of error.

Plaintiff's complaint seeks enforcement of a $30,000 demand note, signed by defendant and her husband, dated July 25, 1975. Defendant's answer raised the affirmative defense that the note was not intended to evidence a legal debt and that it lacked consideration in that it was given in exchange for a similar $30,000 demand note executed by plaintiff and made payable to the Milnes. Defendant also counterclaimed on this demand note executed by plaintiff to defendant and her husband.

Over plaintiff's objection, the trial court received testimony from defendant and her

husband that the two notes were executed as a fiction to satisfy plaintiff's wife, who was near death, and who strongly felt that the Milnes still owed the Simpsons money from prior business transactions. The Milnes testified that, in December 1974, plaintiff asked them to execute "offsetting" notes so that he could show his wife, defendant's sister, that he had some tangible record of the Milnes' indebtedness to the Simpsons. Out of respect for her sister's condition, the defendant and her husband complied with this request, and the notes were executed. Shortly thereafter, Mrs. Simpson died.

The Milnes further testified that in July 1975, Simpson demanded payment on the note executed by the Milnes. But, according to their testimony, after being reminded of the offsetting note from plaintiff to the Milnes, plaintiff did not pursue the subject again until he brought this suit.

The trial court found that "at the time the notes were exchanged they were intended as "cancellation" notes for plaintiff to show his dying wife something in regard to what she felt the defendant owed her...." The court concluded that "neither party is entitled judgment as the notes, at the time of making and delivery, were not supported by consideration nor were they intended to represent actual promise (sic) to pay."

Plaintiff contends that the trial court erred in allowing testimony regarding the dates which appeared on the notes and the purpose for which the notes were prepared. We disagree.

■ Generally, where a written document is a complete and accurate expression of the parties' agreement, parol evidence is not admissible to vary or contradict the terms of the document. *Aztec Sound Corp. v. Western States Leasing Co.*, 32 Colo.App. 248, 510 P.2d 897 (1973). *See Budget Systems, Inc. v. Seifert Pontiac, Inc.*, 40 Colo.App. 406, 579 P.2d 87 (1978). However, parol evidence is admissible when it goes to the question whether, by agreement of the parties, the instrument itself should be enforceable. *Burenheide*

*v. Wall*, 131 Colo. 371, 281 P.2d 1000 (1955). As our Supreme Court stated in *McCaffrey v. Mitchell*, 98 Colo. 467, 56 P.2d 926 (1936):

"It is true that ordinarily a note is prima facie evidence of an obligation ... but when in the hands of the original payee, the way is always open to the maker to prove circumstances showing that the note never was made or delivered with the intention that it should be binding at all events according to its terms, and he may not be foreclosed showing that the note in effect is no contract at all."

■ Here, the note was in the hands of plaintiff, the original payee, and the evidence received went to the question of whether the parties intended that the note be a legally enforceable debt. Therefore, parol evidence was admissible.

Plaintiff also contends that the trial court erred in concluding that the notes were "cancellation" notes and without consideration. We disagree.

■ Although the trial court used the term "cancellation" notes in its findings of fact and conclusions of law, the basis for the court's conclusion was that the notes lacked consideration and were not intended as a promise to pay. Regardless of the accuracy of the terminology used by the trial court, there was adequate evidence to support its conclusion that the two $30,000 notes were not intended to represent a legally enforceable debt. *Page v. Clark, supra.* Accordingly, because the result reached by the trial court was correct, it will not be disturbed on review. *Silverstein v. Sisters of Charity*, 43 Colo.App. 446, 614 P.2d 891 (1979).

■ Finally, plaintiff contends that the trial court erred in refusing to bar defendant's action on the note executed by plaintiff because this action was brought more than six years after the note was executed and therefore was outside the applicable statute of limitations period. This contention is without merit.

Although defendant counterclaimed on the note from plaintiff to defendant and her husband, the trial court denied recovery on both notes for the reasons set out above. This conclusion by the trial court was in effect a ruling in favor of defendant on her affirmative defense of lack of consideration. The statute of limitations does not bar the use of the note in a defense. See § 13–80–110(1)(a), C.R.S.1973.

### III. The Bank Note

Plaintiff also objects to the trial court's apportionment of liability on a third note, and the court's denial of attorney's fees and interest on that note. We find no error.

On February 16, 1977, William Milne, in his capacity as president of Valley Loan Association (Valley), executed a promissory note (the bank note) for $74,000 to Republic National Bank of Pueblo (the bank). The note contained provisions for interest at "2.5% per annum over Denver prime" and for reasonable attorney's fees in the event of default.

On the same date, plaintiff, defendant, and her husband executed to the bank a "continuing guarantee" (the guarantee). Under the terms of the guarantee, the guarantors promised to pay the bank "any and all indebtedness" of Valley. The guarantee provided that "indebtedness" was to be used in its "most comprehensive sense" and "referred to all advances, debts, obligations and liabilities" of Valley "now or hereafter made, incurred, or created." The liability of the guarantors was "joint and several, and independent of the obligations of" Valley, and was not to exceed $74,000.

On October 27, 1980, plaintiff paid to the bank $49,372.72, and the bank then purported to execute, on the back of the note, an assignment to plaintiff of "all its right, title and interest in and to the within note."

One of plaintiff's contentions at trial was that he was a holder of the note as a result of the assignment by the bank and that therefore he was entitled to all of the benefits of the note, including the provision for attorney's fees and interest. He further contended that by virtue of the guarantee

agreement he could now sue defendant because he, plaintiff, had become the holder of the note. Finally, plaintiff contended that defendant's liability under the note and guarantee agreement should correspond to her percentage of the ownership of Valley. Defendant and her husband at that time owned 80% of the stock in Valley.

The trial court however apportioned the liability evenly between plaintiff and defendant, awarding plaintiff half of the payment price, or $24,686.36, plus interest at the statutory rate. The trial court construed the relationship between plaintiff and defendant as an action in contribution by a co-guarantor, not an action by a holder against those liable on the note. Accordingly, the trial court denied plaintiff's request for attorney's fees and for the interest rate stated on the face of the note.

Plaintiff first contends that the trial court erred in failing to award attorney's fees and the interest rate which appears on the note. We disagree.

■ At the outset we note that because the liability of the guarantors was contained in a wholly separate guarantee agreement, and because none of the guarantors signed the bank note as guarantors, the issues presented herein are not controlled by the provisions of § 4–3–101, et seq., C.R.S.1973, of the Uniform Commercial Code concerning commercial paper. *Eikel v. Bristow Corporation*, 529 S.W.2d 795, (Tex.Civ.App.1975); *Fewox v. Tallahassee Bank & Trust Company*, 249 So.2d 55 (Fla.Dist.Ct.App.1971). *See* §§ 4–3–401 and 4–3–416, C.R.S.1973. Accordingly, we look to the general principles of contract and guarantee law for a resolution of this problem. Section 4–1–103, C.R.S.1973.

■ Although the plaintiff may enjoy the status of an assignee of the bank and may, therefore, enforce the note against the maker, Valley, the note itself does not contain any provision for liability against defendant. Any liability which defendant might have with respect to this note must arise out of the guarantee.

As mentioned above, the guarantee is general in nature, and nowhere refers specifically to the bank note itself. Moreover, the bank is the party entitled to enforce rights under the guarantee agreement. Although plaintiff may be an assignee under the note, this does not make him an assignee under the guarantee agreement. The only right which plaintiff has against defendant with respect to the bank note is one for contribution for having paid more than his equitable share under the guarantee. Although the bank note contains provisions for attorney fees and interest, those provisions cannot be enforced against one who is not a party to that agreement. *See Mitten v. Weston*, 44 Colo.App. 274, 615 P.2d 60 (1980); *Barbara's Lighting Center, Inc. v. Churchill*, 35 Colo.App. 439, 540 P.2d 1110 (1975). Accordingly, the trial court did not err in denying plaintiff attorney fees and interest stated in the note.

We also disagree with plaintiff's contention that the trial court erred in refusing to apportion defendant's liability in an amount corresponding to the parties' proportionate ownership in Valley. As mentioned above, the guarantee was general and obligated each of the guarantors jointly and severally in an amount not to exceed $74,000. The guarantee agreement contains no provision for apportionment of liability between the guarantors themselves.

 Guarantors who pay more than their proportionate share of an obligation are entitled to contribution from other guarantors who are jointly and severally liable on the obligation. *See Taylor v. Hake*, 92 Colo. 330, 20 P.2d 546 (1933); *Stieben v. Korby*, 533 P.2d 530 (Colo.App. 1975) (not selected for official publication). Such an action is generally considered to be equitable in nature, *Schoenfeld v. Neher*, 428 F.2d 152 (10th Cir.1970); *Milner v. Eskridge*, 62 Colo. 430, 163 P. 1115 (1917), and therefore, resolution of the issues involved rests in the sound discretion of the trial court. *Rice v. Hilty*, 38 Colo.App. 338, 559 P.2d 725 (1976); *Ulander v. Allen*, 37 Colo.App. 279, 544 P.2d 1001 (1976).

Under the facts presented here, we find no abuse of discretion and therefore affirm.

Judgment affirmed.

PIERCE and SMITH, JJ., concur.