T.O. STANLEY BOOT CO., INC., T.O. Stanley, James S. Ruby, Lawrence Harmel, Henry C. Tyler a/k/a H. Tim Tyler, and E. Guy Merrell, Petitioners,

v.

The BANK OF EL PASO f/k/a Cielo Vista Bank, Respondent.

No. D–1272.

Supreme Court of Texas.

Dec. 2, 1992.

Rehearing Overruled March 24, 1993.

Corey W. Haugland, Steven L. Hughes, Thomas W. Brady, El Paso, Bob Roberts, Austin, Warren M. Pulner, El Paso, for petitioners.

William R. Allensworth, Fort Worth, William B. Hardie, Jr., Ken Slavin, El Paso, Thomas E. Kurth, W. Alan Wright, Dallas, for respondent.

## OPINION

COOK, Justice.

This case began as a lawsuit by the Bank of El Paso f/k/a Cielo Vista Bank ("the Bank") on past due debts. The Bank sued T.O. Stanley Boot Co., as borrower, and T.O. Stanley, James Ruby, Lawrence Harmel, E. Guy Merrell, and Henry C. Tyler a/k/a H. Tim Tyler ("the Stanley Group") as guarantors on the notes. All defendants except Tyler counterclaimed. Tyler did not answer.

The jury returned a verdict in favor of all the defendants. The court of appeals reversed the judgment and rendered judgment in favor of the Bank on its affirmative claims. 809 S.W.2d 279. We granted writ to consider various issues, including those concerning breach of contract, fraud, impairment of collateral, the Bank's suit on the note, and to examine the court of appeals' review of the evidence. We affirm in part and reverse and render in part.

### Facts

T.O. Stanley, a bootmaker, incorporated a bootmaking business in 1979. That business was known as T Bar S. In 1986, T Bar S filed for bankruptcy. At the time, the corporation owed the Bank $66,000.

This debt was secured by the bootmaking equipment. The bankruptcy trustee abandoned the equipment.

T.O. Stanley sought out investors to form a new corporation. Stanley also approached the Bank about financing for the new corporation. In addition, Stanley wanted to acquire the bootmaking equipment that had been released to the Bank by the bankruptcy trustee. The Bank required the financial statements of the new investors and projected revenues of the corporation.

The new corporation was formed. It was called T.O. Stanley Boot Co., Inc. (the "Corporation").

Discussions with the Bank continued. On December 5, 1986, Stanley and some of the new investors met with officers of the Bank. The parties discussed the financial needs of the new corporation, the possibility of obtaining the bootmaking equipment, and Stanley's personal indebtedness to the Bank. The parties discussed the possible need for a $500,000 loan for the Corporation. The Bank agreed to sell to the Corporation the bootmaking equipment for the outstanding debt on the equipment of $68,152.30.

Over the next eight months, the Corporation borrowed money for equipment, operating expenses, and leather. All of these debts were evidenced by promissory notes or guaranties. In July 1987, Stanley, Merrell, Ruby, Tyler, and Harmel executed continuing guaranties to accommodate the indebtedness of the Corporation to the extent of $300,000. The Corporation consolidated its existing debts to the Bank in a $216,570.62 note.

In June 1987, the Corporation's board of directors approved a resolution allowing the Corporation to apply for a Small Business Administration ("SBA") Loan in the amount of $500,000. In July 1987, the Corporation was approved by the SBA for a loan of $500,000. In September, the Corporation refused the SBA loan because the SBA terms were considered unacceptable by the Corporation and its investors. The Bank declined to make any further loans to the Corporation unless it provided additional collateral.

The Stanley Group attempted through a series of letters to have the Bank provide a $500,000 line of credit. In November 1987, the Corporation renewed its note with the Bank in a note in the amount of $236,377.61. This note represented the amount of the first consolidated note along with the interest due on that note being rolled over into the new note.

The $236,377.61 note matured on May 22, 1988. The Bank made a demand on the Corporation and the guarantors to pay the note.

There was no attempt by any party to repay the note. The Bank sued the Corporation, Stanley, Merrell, Ruby, Harmel and Tyler on the note and at the same time applied for a temporary injunction to prevent any disposition of the collateral securing the note. The Bank took possession of the collateral in November 1988. For several months the Bank was responsible for paying the rent while the equipment remained on the leased premises.

The Bank filed a separate suit against Stanley, Merrell, Harmel and Tyler for the personal debt of Stanley. Merrell, Harmel, and Tyler had guaranteed the personal debt of Stanley. This suit was consolidated with the Bank's original suit.

### Preservation of Error

The Corporation and the Stanley Group contend that the Bank has not sufficiently preserved error in the trial court for our review. These complaints are without merit. We deal with these contentions as a group.

■ A no evidence point is preserved through one of the following: (1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the issue to the jury; (4) a motion to disregard the jury's answer to a vital fact issue; or (5) a motion for new trial. *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex.1985). The Bank properly preserved

its no evidence points through a motion for judgment notwithstanding the verdict.

■ The Bank also preserved its complaints regarding the standing of the individuals to assert certain causes of action, including usury, breach of contract, and fraud. The Bank filed a verified denial that the individuals as guarantors on the note had no standing to assert these claims, which the Bank contended belonged solely to the Corporation. Tex.R.Civ.P. 93(2). The Bank also specially excepted to the capacity of the individuals to assert these claims. *See Group Medical & Surgical Serv. v. Leong,* 750 S.W.2d 791, 794 (Tex.App.—El Paso 1988, writ denied). The Bank sufficiently preserved its points of error for our review.

### Breach of Contract

The Corporation and the Stanley Group asserted a cause of action based on a breach of contract. The Petitioners contend that they had a valid contract with the Bank, which called for the Bank to make available to them a $500,000 line of credit.

■ In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook. *Bendalin v. Delgado,* 406 S.W.2d 897, 899 (Tex.1966); *University Nat'l Bank v. Ernst & Whinney,* 773 S.W.2d 707, 710 (Tex.App.—San Antonio 1989, no writ). The material terms of the contract must be agreed upon before a court can enforce the contract. Where an essential term is open for future negotiation, there is no binding contract. *Gerdes v. Mustang Exploration Co.,* 666 S.W.2d 640, 644 (Tex.App.—Corpus Christi 1984, no writ).

■ Each contract should be considered separately to determine its material terms. *Bridewell v. Pritchett,* 562 S.W.2d 956, 958 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.). In a contract to loan money, the material terms will generally be: the amount to be loaned, maturity date of the loan, the interest rate, and the repayment terms. *Wheeler v. White,* 398 S.W.2d 93, 95 (Tex.1965); *Pine v. Gibraltar Savings Assn.,* 519 S.W.2d 238, 243–44 (Tex. Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.); *accord Stansel v. American Sec. Bank,* 547 A.2d 990, 993 (D.C.App. 1988), *cert. denied,* 490 U.S. 1021, 109 S.Ct. 1746, 104 L.Ed.2d 183 (1989); *Champaign Nat'l Bank v. Landers Seed Co., Inc.,* 165 Ill.App.3d 1090, 116 Ill.Dec. 742, 745, 519 N.E.2d 957, 960 (1988), *cert. denied,* 489 U.S. 1019, 109 S.Ct. 1138, 103 L.Ed.2d 199 (1989); *McErlean v. Union Nat'l Bank of Chicago,* 90 Ill.App.3d 1141, 46 Ill.Dec. 406, 410, 414 N.E.2d 128, 132 (1980).

■ The court of appeals concluded that there was no evidence of some of the material terms of this contract. Petitioners challenge the court of appeals' ruling, claiming the court of appeals failed in its no evidence review to consider only the evidence supporting the verdict. We agree that the court of appeals incorrectly set out evidence that contradicted the verdict. In reviewing a no evidence point, the court of appeals should consider only the evidence that supports the verdict; it should ignore all evidence that does not support the verdict. *See Alm v. Aluminum Co. of America,* 717 S.W.2d 588, 593 (Tex.1986). Nevertheless, considering only the evidence that supports the verdict, we reach the same conclusion as the court of appeals.

■ Petitioners introduced evidence of only one material element of a contract to loan money—the amount to be loaned. The only evidence introduced regarding the interest rate was Stanley's testimony that the Bank "always charged" 1½% to 2½% over the prime rate. This testimony amounts to no evidence of the interest rate.

Petitioners failed to present any evidence of the repayment terms of the note. Petitioners assert that repayment was to be controlled by the pro formas submitted to the Bank. The record does not support Petitioners' position. The pro formas were discussed in connection with another loan. Viewing this evidence in the light most favorable to the verdict, we cannot conclude that the pro formas supplied the repayment terms.

We conclude that the alleged contract failed for indefiniteness. No evidence was introduced regarding the interest rate of the alleged loan or the repayment terms. These elements were material to this contract, and a court is not free to supply them.[1]

### Fraud

Petitioners contend that the court of appeals erred in rendering judgment in favor of the Bank on the fraud claim. Petitioners claim that the Bank misrepresented that it would loan them $500,000, and that the misrepresentation induced their reliance and caused them damage. We affirm the judgment of the court of appeals.

To recover for fraud, Petitioners must prove: (1) that a material representation was made; (2) that it was false; (3) that the speaker knew it was false when made or that the speaker made it recklessly without any knowledge of the truth and as a positive assertion; (4) that he made it with the intention that it be acted upon by the other party; (5) that the party acted in reliance upon it; and (6) damage. *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex.1977). Because the representation in this case involves a promise to do an act in the future, Petitioners also had to prove that, at the time the Bank's representative made the promise, the Bank had no intention of performing the act. *Crim Truck & Tractor v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 597 (Tex.1992); *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 433 (Tex.1986); *Stanfield v. O'Boyle*, 462 S.W.2d 270, 272 (Tex.1971).

Petitioners point to a memorandum dated shortly after the December 5, 1986 meeting as evidence that the Bank never intended to perform its promise. The memorandum is from one bank officer, Daniel Nasser, to Clarke Harvey, the bank president. It states that Nasser is compiling the resumés of the new investors for the SBA loan package. Petitioners argue that this memorandum proves that the Bank

never intended to fulfill its obligation to provide $500,000 in financing for the Corporation. Additionally, Petitioners point to the fact that Harvey denied at trial having made an agreement with them to loan the Corporation $500,000 as evidence that the Bank never intended to perform its promise.

Even viewing the evidence in the light most favorable to the verdict, we conclude that there is no evidence that the Bank never intended to perform. Evidence that the Bank investigated alternative means of financing does not constitute evidence that the Bank never intended to perform.

Denying that a promise has been made is a factor showing no intent to perform when the promise was made. *Spoljaric*, 708 S.W.2d at 435; *Stone v. Williams*, 358 S.W.2d 151, 155 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.). The record reveals that Harvey denied that there was a line of credit for $500,000. This testimony alone, however, does not constitute evidence that the Bank never intended to perform its promise.

We conclude that the evidence in the record of the Bank's intention not to perform is so weak that it creates only a mere surmise or suspicion of its existence. When evidence is so weak it constitutes no evidence. Such evidence will not support a verdict. *See Seidenick v. Cal Bayreuther Assocs.*, 451 S.W.2d 752 (Tex.1970).

### The Bank's Affirmative Claims

The court of appeals rendered judgment in favor of the Bank for the amount the Bank contends was due under the promissory notes and guaranties. Petitioners contend that any award to the Bank on its affirmative claims was improper because the Bank failed to obtain a jury question on its claims.

The Bank failed to submit or request any element of its affirmative claim to the jury. Unless the Bank's affirmative claim is conclusively established under the evidence,

---

**1.** Because we conclude that there was no contract, we do not reach the court of appeals' alternative holding, which was that the submission of an SBA loan fulfilled the Bank's obligations.

the ground of recovery is waived upon appeal. TEX.R.CIV.P. 279.

In the instant case, the Bank introduced the notes into evidence without objection. The amount of the notes was uncontroverted. The Bank presented testimony that the Bank lent $236,377.61 to the Corporation, which was due at the time of trial. The Bank presented evidence without contradiction that the amount due under Stanley's personal note was $31,208.42. The Bank's witness, Frank Bashore, testified as to the amounts due as interest under each note.

Only disputed issues must be submitted to the jury. *Employers Casualty Co. v. Block*, 744 S.W.2d 940 (Tex.1988). In this case, there was no dispute as to the amounts of the notes or the balance due under them. The Petitioners did plead and submit to the jury the defense of impairment of collateral, but this does not affect the Bank's proof. The Bank was entitled to recover the undisputed balance due under the notes and the stipulated attorney's fees subject to the defense of impairment of collateral.

### Impairment of Collateral

At trial, Petitioners introduced evidence that the collateral securing the loans made to the Corporation was damaged both by exposure to the elements and by vandalism, allegedly due to the Bank's failure to maintain a security system. The jury returned a finding that the Bank had unjustifiedly impaired the collateral, and the jury found that the Corporation was damaged in the amount of $70,000.

■ As guarantors, Stanley, Ruby, Harmel, Tyler and Merrell are not entitled to assert the defense of impairment of collateral found in section 3.606 of the U.C.C. Section 3.606 discharges a party to the instrument who does not consent to the impairment of collateral. TEX.BUS. & COMM.

CODE ANN. § 3.606 (Vernon 1968). The guaranties were not negotiable instruments. *Id.* at § 3.104. Further, the guarantors were not parties to the Corporation's note. *Federal Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 710 (Tex.1990).

The U.C.C. does not displace common law "[u]nless displaced by the particular provisions of this title." TEX.BUS. & COMM.CODE ANN. § 1.103 (Vernon 1968). We conclude that a guarantor may assert the common law defense of impairment of collateral.[2]

■ The defense of impairment of collateral is based on the creditor's obligation to use ordinary care to secure and preserve collateral in its possession from waste, injury, or loss. *Blocksom v. Guar. State Bank & Trust*, 251 S.W. 1025, 1027 (Tex. Com.App.1923, holding approved); *First Nat'l Bank, Giddings v. Helwig*, 464 S.W.2d 953, 955 (Tex.Civ.App.—Austin 1971, no writ). If the creditor breaches his duty, the surety is discharged on the note to the extent of his loss. *Webb v. Finger Contract Supply Co.*, 447 S.W.2d 906, 907 (Tex.1969); *Blocksom*, 251 S.W. at 1027; *First Nat'l Bank*, 464 S.W.2d at 955.

■ The Bank argues that the guarantors waived any defense of impairment of collateral in their guaranty agreements. Each guaranty expressly waived the defense. The parties to a guaranty may normally waive such a defense. In this case, however, the Bank failed to plead waiver as an affirmative defense. TEX.R.CIV.P. 94. Under these facts, the Bank has lost its right to assert its waiver defense.

The Bank presents no argument as to why the Corporation should not be allowed to assert the defense of impairment of collateral. The Corporation and the guarantors Stanley, Ruby, Merrell, and Harmel are discharged on the Corporation's note to

---

**2.** Other jurisdictions have found that section 3.606 of the U.C.C. does not displace common law. *See Kansas State Bank v. DeLorean*, 7 Kan.App.2d 246, 640 P.2d 343, 351 (1982) (stating that sec. 3.606 is not applicable to guarantors, but the common law rule applies); *cf.*

*Simpson v. Milne*, 677 P.2d 365, 369 (Colo.App. 1983) (common law and contract law apply to guaranties not U.C.C. art. 4); *Fewox v. Tallahassee Bank & Trust Co.*, 249 So.2d 55, 57 (Fla.App. 1971) (law of guaranty controls obligations between guarantor and guarantee).

the extent of the impairment of collateral, $70,000.[3]

### Default Judgment Against Tyler

Tyler never answered in this case. The trial court entered an interlocutory default judgment against Tyler. After the jury returned its favorable verdict with respect to the other defendants, the trial court removed the default judgment and entered a take nothing judgment in Tyler's favor. The court of appeals rendered judgment against Tyler in favor of the Bank. Tyler has not appealed the decision of the court of appeals. The decision of the court of appeals is affirmed with respect to him.

### Conclusion

We affirm the court of appeals' judgment with respect to the breach of contract and fraud claims of Petitioners. Petitioners take nothing against the Bank. We modify the judgment of the court of appeals on the Bank's affirmative claims on the promissory notes. The Bank is entitled to the amount due on the Corporation's note with interest subject to the offset in the amount of $70,000 due T.O. Stanley Boot Co., T.O. Stanley, James Ruby, E. Guy Merrell, and Lawrence Harmel. The Bank also recovers attorney's fees in the amount of $58,500. The court of appeals' judgment regarding the personal note of T.O. Stanley is affirmed. The judgment against Henry Tyler is affirmed.

Dissenting opinion by MAUZY, J., joined by DOGGETT and GAMMAGE, JJ.

MAUZY, Justice, dissenting.

Today's opinion represents yet another setback for small businesses across this state. Once again, the majority ignores a jury verdict in favor of a small business, substituting its own judgment for that of a jury of ordinary Texans; and once again, the more powerful interest prevails.[1] I dissent.

This dispute arose from efforts by the Bank of El Paso to recapture funds from two notes previously written off as uncollectible: a $68,000 debt incurred by a bootmaking company, T Bar S, and a $43,000 personal debt incurred by the company's founder, T.O. Stanley. To cover those losses, the Bank enticed a group of investors to revitalize the bootmaking company, assuring them that it would provide a line of credit on the same terms as it had in the past. The Bank promised to provide up to $500,000 in credit; but its plan, as established at trial, was to loan the new company just enough money to get the business started. The Bank would then set the Corporation up with a loan supplied by the Small Business Administration and recoup the amounts loaned.

After the Corporation rejected the SBA loan as unacceptable, the Bank refused to honor its commitment unless the borrowers would collateralize dollar-for-dollar on all future loans. When the investors rejected this new condition, the Bank refused to advance any more money, and the corporation ultimately failed due to the lack of full capitalization.

**3.** The court of appeals incorrectly assumed that the trial court allowed Petitioners monetary damages for the impairment of collateral. Impairment of collateral is a defensive issue. A review of the trial court's judgment reveals that this amount was not included in the award.

**1.** The majority continues an unfortunate trend. See, e.g., *Westgate v. State*, 843 S.W.2d 448, 458–59 (Tex.1992) (Mauzy, J., dissenting) (criticizing majority's embracement of governmental bureaucracies); *id.* at 459–63 (Doggett, J., dissenting) (small business precluded from proving that condemnation undertaken in bad faith); *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 86 (Tex.1992) (Doggett, J., concurring and

dissenting, joined by Mauzy, J.) (majority denied recovery of lost profits to a family business); *Caller–Times Publishing Co. v. Triad Communications, Inc.*, 826 S.W.2d 576, 589 (Tex. 1992) (Doggett, J., dissenting, joined by Mauzy, J.) (majority overturned recovery by a small company put out of business by the anticompetitive practices of a monopoly); *Federal Land Bank v. Sloane*, 825 S.W.2d 439, 443 (Tex.1991) (Mauzy, J., dissenting) (majority denied recovery of lost profits to a family business); *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 597 (Tex.1992) (Mauzy, J., dissenting, joined by Doggett and Gammage, JJ.) (majority overturned local dealer's recovery for abuse by a franchisor).

After hearing all of the evidence, the jury determined that the Bank had defrauded the Corporation. This finding was supported, in part, by testimony from the Bank's president, Clarke Harvey, denying that the Bank ever agreed to loan the Corporation $500,000. The finding was also supported by evidence showing the Bank's motive for defrauding the Corporation: specifically, the Bank's desire to recoup the $111,000 in loans that had previously been written off.

Under settled law, a denial that a promise was made is a factor showing a lack of any intent to perform the promise. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex.1986); *Stone v. Williams*, 358 S.W.2d 151, 155 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.). Additionally, " 'slight circumstantial evidence' of fraud, when coupled with a promise to perform, is sufficient to support a finding of fraudulent intent." *Spoljaric*, 708 S.W.2d at 435. The issue of intent in fraud cases is, as a general matter, "uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Id.* at 434.

After acknowledging *Spoljaric* and *Stone*, the majority proceeds to reject them both without explanation. Harvey's testimony, the majority admits, is "a factor showing no intent to perform when the promise was made"; but for some reason, it "does not constitute evidence that the Bank never intended to perform its promise." At 222. The majority does not bother to mention the evidence of motive, despite this court's previous recognition that "[s]ince intent to defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence." *Spoljaric*, 708 S.W.2d at 435. Nor does the court show any hesitation in setting aside the jury's finding of fraud, despite our prior unequivocal recognition that the issue of intent is a question for the jury.

I would uphold the jury's finding of fraud. Additionally, because the Bank obtained the promissory notes through its fraudulence, I would uphold the trial court's take-nothing judgment on the Bank's affirmative claims. Thus, I would reverse the judgment of the court of appeals and render judgment against the Bank for $7,980,000, plus court costs and attorney's fees, with the Bank taking nothing on its affirmative claims.

DOGGETT and GAMMAGE, JJ., join in this dissenting opinion.