[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This collection case has been tried to the court. The original plaintiff, UMLIC-Ten Corp. ("UMLIC"), commenced this action by service of process on May 31, 1998. There are two defendants, Wilford and Yvonne Jones. The complaint consists of a single count seeking damages for nonpayment of a promissory note. On January 28, 2000, the Court granted a motion to substitute United Mortgage C.B., LLC ("United") as the plaintiff.
On June 1, 1999, the defendants filed an answer and special defense. (The defendants also filed a counterclaim, but they have subsequently advised the Court that they are not proceeding on the counterclaim.) The special defense involves the alleged conduct of the original plaintiff's predecessor in interest, New Haven Savings Bank ("NHSB"). The special defense is one of setoff and recoupment, claiming that NHSB's mismanagement of the property after taking possession caused damage to the defendants.
The case was tried to the court on January 28, 2000. Final arguments were heard on April 10, 2000. With the court's permission, the parties were given a post-argument continuance to attempt to resolve their differences. On June 6, 2000, the parties informed the court that their attempts to resolve the case had proved unsuccessful.
The evidence establishes that on November 14, 1986, the defendants signed an adjustable rate note in the principal amount of $46,400, payable to NHSB. The note requires monthly payments of both principal and interest. The maturity date of the note is November 15, 2006. The note was secured by a mortgage on property located at 49 Wilson Street in New Haven. On December 6, 1996, NHSB assigned the note to UMLIC. On January 29, 1999, UMLIC assigned the note to United.
The defendants have made no payments on the note since November 1995. CT Page 6968 The note is unquestionably in default. The plaintiff has plainly established liability in its case-in-chief. It is uncontested that, prior to consideration of the special defense, the plaintiff's damages are in the amount of $48,892.90. The special defense must now be considered.
The special defense alleges that NHSB took possession of the property securing the mortgage "by changing the locks on said property and prohibiting access to the property by the Defendants." It further alleges that both NHSB and UMLIC "committed waste of the collateral securing the note by (a) failing to rent the real property, (b) failing to protect said property from vandalism, and (c) neglecting said property."
The defendants presented credible evidence that in 1996, after the note had gone into default but prior to its assignment to UMLIC, NHSB assumed control of the mortgaged property. A representative of NHSB informed Wilford Jones that the house would be boarded up, and that is indeed what happened. Although the defendants did not personally observe the house being boarded up and are consequently unable to identify the person responsible for that action, the fact remains that the house was boarded up after NHSB assumed control of the property and said that it would be boarded up. Thoreau wrote in his journal that, "Some circumstantial evidence is very strong, as when you find a trout in the milk." The circumstantial evidence here establishes that NHSB boarded up the defendants' house.
The house was subsequently vandalized. The vandalism was extremely serious, and the defendants suffered significant economic injury as a result. A conservative assessment of Mr. Jones' credible testimony establishes that the sum necessary to repair the damage done to the property under the control of NHSB and UMLIC is $20,000. (Mr. Jones additionally testified to a water bill of $2,000 incurred when the water was left running, but the defendants have presented no evidence of payment.)
The court's task in this case has been greatly simplified by certain concessions that the parties candidly made at argument. The plaintiff concedes that it is not a holder in due course. The defendants concede that they are responsible for taxes paid on the property and that there is no evidence that the water bill in question has been paid. The issue that remains for the court's consideration is the validity and application of the special defense.
At the time that the note in question was executed, Conn. Gen. Stat. § 42a-3-306 (1985) provided that, "Unless he has the rights of a holder in due course any person takes the instrument subject to . . . (b) all defenses of any party which would be available in an action on a CT Page 6969 simple contract." The Connecticut legislature substantially amended Article 3 of the Uniform Commercial Code (UCC) in 1991. 1991 Conn. Acts No. 91-304. Conn. Gen. Stat. § 42a-3-305 (a) (1999) now provides that, in the case of a person not a holder in due course, "the right to enforce the obligation of a party to pay an instrument is subject to . . . (3) [a] claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument." The official commentary to the new § 3-305 suggests that the provision as amended was intended to clarify the former law which had caused some confusion in the courts. Conn. Gen. Stat. Ann. § 42a-3-305 cmt. 3 (2000 Supp.). "An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act." Departmentof Social Services v. Saunders, 247 Conn. 686, 702, 724 A.2d 1093 (1999). (Internal quotation marks and brackets omitted.) Consequently, Conn. Gen. Stat. § 42a-3-305 (a)(3), as amended, will be considered controlling for purposes of this decision.
The issue that divides the parties is whether the claim in recoupment asserted by the special defense in this case "arose from the transaction that gave rise to the instrument" for purposes of § 42a-3-305 (a)(3). Under the circumstances of this case, I conclude that the answer to this question is Yes. The special defense asserted here is waste of the collateral. This defense is "based on the creditor's obligation to use ordinary care to secure and preserve collateral in its possession from waste, injury, or loss." T.O. Stanley Boot Co. v. Bank of El Paso,847 S.W.2d 218, 223 (Tex. 1992). If the creditor breaches its duty, the debtors are discharged on the note to the extent of their loss. Id. The note in question in this case was secured by a mortgage on the real property located at 49 Wilson Street. The plaintiff's argument that its action on the note is distinct and separate from a foreclosure action is beside the point. The defendant's claim is not affected by the presence or absence of a foreclosure action. The claim arises from NHSB's actions with respect to the collateral on its note. The waste in issue here arose from the transaction that gave rise to the instrument.
With respect to the substance of the special defense, the evidence submitted to the court establishes that NHSB failed to use reasonable care to secure and preserve the collateral in its possession from waste, injury, or loss. The only "care," if it can be called that, taken by NHSB with respect to the Wilson Street property was in boarding the property up. In the neighborhood in which the property was located, NHSB might as well have hung an invitation to plunderers on the front door. There is no evidence that NHSB did anything to prevent the wholesale vandalism that subsequently occurred. I find that it failed to use ordinary care and that this failure proximately caused damages in the amount of $20,000 to CT Page 6970 the defendants.
The $20,000 in damages suffered by the defendants must be subtracted from the damages in the amount of $48,892.90 established by the plaintiff in its case-in-chief. Judgment must therefore enter in favor of the plaintiff in the net amount of $28,892.90.
Jon C. Blue Judge of the Superior Court