

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00019-CV

_____

IN THE INTEREST OF A.H., A CHILD

On Appeal from the 325th District Court
Tarrant County, Texas
Trial Court No. 325-493219-11

Before Bassel, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

In this appeal from a judgment terminating a parent–child relationship, Mother—the only appellant—raises a single issue: that the evidence is legally and factually insufficient to support the jury's finding that terminating the parent–child relationship was in the child's best interest. We affirm.

## I.  FACTUAL BACKGROUND

In July 2018, Mother and A.H. were living in Mother's car. Mother's two older children had been living with their father, but he brought them back to Texas. Because Mother could not care for them and because their father had to return to Kansas where he was on parole, those two children were placed into the care of the Department of Family and Protective Services.

The Department attempted to remove A.H. from Mother's care in 2019. In August 2019, Arlington police had found Mother smoking marijuana in a stolen car in nine-year-old A.H.'s presence. But it took the Department several months to find Mother and A.H. after Mother's arrest. When the Department found A.H. with her maternal grandmother at a motel, the caseworker took A.H. to Cook Children's Medical Center for a medical examination; A.H. tested positive for methamphetamine.

In December 2019, the Department filed a removal petition, and the trial court named the Department A.H.'s temporary managing conservator. Because the petition had been filed in the pending case with A.H.'s brothers, the Department moved to sever the two cases. The trial court granted the motion.

Although the Department had obtained an order naming it A.H.'s temporary managing conservator, Mother refused to relinquish possession of A.H. The Department placed A.H. on a child-safety-alert list.

On April 16, 2020, the Department filed a new petition[1] seeking to remove A.H. from Mother's care after Mother had been pulled over by a police officer; because Mother appeared to be delusional, the police took her to John Peter Smith Hospital.[2] A.H. was not wearing a seatbelt and had only a few strands of hair on her head. But she appeared at that time to be well-dressed and well-nourished.[3] The two had again been living in Mother's car, and Mother admitted that she used marijuana every day.

The trial court ordered A.H. removed from Mother's care and named the Department A.H.'s temporary managing conservator. The Department could not find any suitable family member to take custody of A.H. Her father had not seen her since she was a year old.

---

[1]*See In re M.N.G.*, 147 S.W.3d 521, 528 & n.3 (Tex. App.—Fort Worth 2004, pet. denied) (op. on reh'g) (noting that Department had abandoned prior petition by filing new one).

[2]The CPS supervisor who interviewed Mother at the hospital described her behavior as erratic and confrontational; Mother alluded to an FBI video and was yelling at people.

[3]The CPS investigator who had taken A.H. to Cook Children's for an examination in November 2019 testified that at the time of the examination, A.H. was "extremely thin." The investigator was concerned A.H. had been pulling out her hair because of stress. The jury saw photographs of A.H. taken in November 2019.

Mother had an extensive CPS history dating back to 2009 and involving drug use affecting her children, domestic violence, and neglectful supervision. She had not cooperated with the Department's pre-removal investigation.

At trial,[4] the evidence showed that

- Mother had been diagnosed with bipolar depression and PTSD;

- A.H. had not attended school for three years before her removal;

- Mother believed the Department had removed A.H. from her care because Mother had failed to protect A.H. from the Department;

- although Mother had completed some of her service plan, she had not completed individual counseling, had submitted to very few drug tests,[5] and had refused to provide information about her mental health and living circumstances;

- A.H. had severe anxiety about visits with Mother, which were suspended for a short time at Mother's request;

- Mother had not visited with A.H.'s older brothers since 2018;

- at the time of trial, Mother was renting a single bedroom in a four-bedroom house where she did not know her other roommates, all males;

---

[4]The trial court extended the dismissal deadline in accordance with Family Code Section 263.401 and the applicable Texas Supreme Court COVID-19 emergency order. *See* Tex. Fam. Code Ann. § 263.401(a)–(b); Fortieth Emergency Order Regarding the COVID-19 State of Disaster, Misc. Docket No. 21-9079, 629 S.W.3d 911 (Tex. July 19, 2021).

[5]Mother was on probation during the case and claimed to have submitted clean drug samples monthly, and worked other services, through the probation department. But the family-services specialist could not verify what Mother had done because Mother had refused to timely provide a records release. Mother claimed not to have used methamphetamine since 2013 and blamed A.H.'s positive methamphetamine result on tainted food given to them by neighbors.

4

- A.H. was on grade level and her school performance was average;

- A.H. had been moved from her non-adoption-motivated foster home into a different foster home, and the Department was looking for an adoption-motivated home for her;

- A.H. was "maintaining," but not necessarily thriving, in foster care;

- although A.H. wanted to continue contact with her Mother, she had not told the family-services specialist how she felt about Mother's rights being terminated;

- A.H. and Mother had made progress with their relationship by the time of trial;

- A.H. was able to visit with her brothers and was very happy to see them, but whether she could see them if she were adopted depended on the adoptive family; and

- although A.H.'s attorney ad litem told the jury during closing argument that A.H. had told her A.H. did not want Mother's rights terminated but instead wanted defined rules and boundaries for their relationship, the guardian ad litem's report admitted into evidence recommended termination, noting that what children want often differs from what they need and that children often want a relationship with even a toxic parent.

The jury found that Mother had placed A.H. in or allowed her to remain in endangering conditions or surroundings, that Mother had endangered A.H. or knowingly placed her with people who endangered her, and that Mother had failed to comply with a court order setting the conditions for A.H.'s return to her custody. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (O). It also found that terminating the parent–child relationship was in A.H.'s best interest. *Id.* § 161.001(b)(2).

## II. SOLE SUFFICIENCY ISSUE NOT PRESERVED

In her sole issue, Mother challenges the legal and factual sufficiency of the evidence to support the jury's best-interest finding. But Mother failed to preserve both challenges: she did not seek a directed verdict, object to the inclusion of a best-interest instruction in the charge, or file a motion for new trial. *See In re S.C.*, No. 02-18-00422-CV, 2019 WL 2455612, at *4 (Tex. App.—Fort Worth June 13, 2019, pet. denied) (mem. op.); *In re J.S.*, No. 02-18-00164-CV, 2018 WL 5833438, at *2 (Tex. App.—Fort Worth Nov. 8, 2018, pet. denied) (per curium) (mem. op.) (citing Tex. R. Civ. P. 324(b)(2)–(3); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003); *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 220 (Tex. 1992)). Thus, we must overrule her issue without regard to the merits. *See Fernandez v. Indep. Bank*, No. 02-20-00375-CV, 2021 WL 4621758, at *1 (Tex. App.—Fort Worth Oct. 7, 2021, no pet.) (mem. op.).

## III. CONCLUSION

We overrule Mother's sole issue and affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Delivered: May 19, 2022

6