GERAGHTY AND MILLER, INC., Plaintiff,

v.

CONOCO INC., et al., Defendants.

No. CIV. A. 97-1119.

United States District Court,
S.D. Texas,
Houston Division.

Oct. 13, 1998.

---

**6.** There is no evidence that managers even directly engage in expressive conduct as entertainers do. This point raises concern for the Court, which has not been addressed by the parties, as to whether managers are entitled to the same First Amendment protection as entertainers since their work does not entail "directly" engaging in the expressive conduct that entitles entertainers to that protection, namely topless dancing. The City does not appear to argue that managers are not entitled to First Amendment protection. Indeed, it appears that all parties *assume* that managers are entitled to such protection.

Without the benefit of argument on this issue, the Court concludes that managers are entitled to First Amendment protection. Because the work of managers furthers the primary purpose of sexually oriented businesses, which is to provide

a forum for expression that is controversial and protected—to a limited extent—under the First Amendment, the Court concludes that managers are protected. This result is in harmony with *TK's Video, Inc. v. Denton County*, 24 F.3d 705, 709–10 (5th Cir.1994), which recognized that licensing of clerks and other employees of adult businesses, who do not themselves engage in sexually oriented performances, must still be evaluated under a First Amendment analysis. *See also TK's Video, Inc. v. Denton County*, 830 F.Supp. 335, 343–44 (E.D.Tex.1993) (invalidating licensing requirement for stockholders, limited partners, equity holders, property owners, and others associated with adult businesses on the ground that such a requirement violated these individuals' First Amendment rights) (this portion of opinion not appealed).

Seagal V. Wheatley, Jenkens Gilchrest Groce Locke Hebdon, San Antonio, TX, Roger R. Evans, Evans and Kosut, Houston, TX, Daniel J. Kasprzak, Houston, TX, Robert L. Soza, Jr., Jenkens & Gilchrist, San Antonio, TX, for Geraghty and Miller Inc.

Bradley B. Beers, Beers and Associates, Houston, TX, George A. Phair, Conoco Inc.,

Houston, TX, John R. Eldridge, Haynes & Boone, Houston, TX, Lynn L. Zimmerman, Condea Vista Co., Houston, TX, for Conoco Inc., Condea Vista Chemical Co.

## MEMORANDUM OPINION

HOYT, District Judge.

## I. INTRODUCTION

This case involves issues of state common law and federal law. Federal jurisdiction is premised on 42 U.S.C. § 9601 *et seq.;* the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA). *See* 42 U.S.C. § 9613(b).

This suit was initiated by Geraghty & Miller, Inc. ("G & M") against Conoco, Inc. and Condea Vista Company ("Conoco/Condea") on or about April 3, 1997. However, discussion about G & M's claims has become unnecessary because G & M has since dismissed its suit against Conoco/Condea. *See Inst. # 68 Order of Dismissal.* However, because Conoco/Condea filed a counterclaim against G & M, the suit continues. In its counterclaim, Conoco/Condea seeks contribution from G & M for its share of recovery costs under CERCLA. Conoco/Condea also seeks recovery for breach of contract, fraud and negligence under state law. Thus, the claims of Conoco/Condea and the defenses of G & M are before the Court for trial.

## II. PARTIES GENERAL CONTENTIONS

To Conoco/Condea's federal and state claims, G & M asserts that because it was not the operator of the Conoco/Condea facility, nor arranger or transporter of the contaminated groundwater it, G & M, is not liable, as a matter of law. Also G & M asserts that it is exempt from CERCLA liability. Regarding the state law claims of breach of contract, fraud and negligence, G & M asserts that the state Statute of Limitations, the Statute of Repose, and lack of evidence suggesting any misrepresentation of material fact upon which Conoco/Condea relied, bars further litigation. It must be fur-

ther noted that G & M also relies upon the statutes of limitations as a further bar to Conoco/Condea's CERCLA claims. The Court is of the opinion that sufficient facts are admitted by the parties that the Court determines that part, if not all, of Conoco/Condea's claims may be resolved as a matter of law.

## III. ADMISSIONS OF FACT [1]

1. Conoco and Vista are Delaware corporations with their principal places of business in Houston.

2. G & M is a Delaware corporation doing business in Texas.

3. Conoco or Vista has owned and operated the Lake Charles Chemical Complex ("LCCC") from 1961 to the present. Beginning in 1968, Conoco began managing, among other chemical compounds, ethylene dichloride ("EDC") at the LCCC. The management of these compounds have continued through today. Historic releases caused EDC contamination of the surface soils and near surface (shallow) groundwater zones. These historic releases caused some migration of contamination down to at least twenty-five feet below the surface of the LCCC, and occurred during the time the LCCC was owned and operated by Conoco or Vista. Conoco and/or Vista are obligated to investigate and address the LCCC contamination issues as required by the state of Louisiana under state groundwater protection laws and regulations and federal and state solid waste laws and regulations. In 1987, Conoco and Vista began recovering or pumping EDC contaminated groundwater from under the Vinyl Chloride Monomer ("VCM") tank farm area of the LCCC. This pilot recovery system consisted primarily of pumping groundwater and treating it prior to discharging it to surface water and was installed in connection with the feasibility study work. The pilot groundwater recovery system which began operating in the VCM tank farm area of the LCCC in 1987 is believed to be currently in operation.

---

1. The Joint Pretrial Order on file in this case contains the parties stipulation of facts. They have been restated here.

4. Conoco and G & M executed [a] Contract on March 12, 1985, [for design, engineering and construction services pertaining to the monitoring and recovery of EDC contaminates]. Vista was a third-party beneficiary under the Contract. Under the terms of the Contract, G & M agreed to furnish to Conoco all required services for a "Ground-Water Quality Assessment, Phase 2" at the "VCM" Plant Area and Waste Water Treatment Area of the LCCC at Westlake, Louisiana. A groundwater monitoring and assessment program was a requirement imposed upon Conoco pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, *et seq.*, the regulations promulgated thereto, as well as counterpart regulations and requirements of the state of Louisiana.

5. The work to be performed by G & M under the Contract was an assessment of possible contamination beneath several suspected source areas at the LCCC, which included the following services: (1) the preparation of design specifications for the installation of groundwater monitor wells and piezometers used to monitor possible groundwater contamination at the LCCC; (2) installation of the monitoring wells and piezometers; and (3) initial sampling of the monitoring wells following installation. G & M completed the Installation of the monitoring wells on July 23, 1985. Thereafter, for approximately one year, G & M continued to sample the monitoring wells and submit quarterly reports to Conoco and Vista, which included interpretation of the monitoring data to determine the nature and extent of contamination. Fifty (50) groundwater monitoring wells and piezometers were installed by G & M under the Contract.

6. In 1988, Conoco and Vista documented their allegations that they had begun to discover potentially serious technical and physical deficiencies in three of the monitor wells installed by G & M pursuant to the Contract. Conoco and Vista allege that their concerns about the groundwater beneath the LCCC (which the wells were supposed to monitor) became so acute that three wells, VB–1, VB–2, and VC–2, were plugged and abandoned with approval from the LDEQ in May 1988.

While plugging these three wells, Conoco and Vista allege they uncovered physical evidence that those three wells were not installed according to the Contract specifications. A fourth well, VD–1, was plugged and abandoned by Conoco and Vista in December 1989. While plugging this fourth well, Conoco and Vista allege they uncovered physical evidence that this fourth well was not installed according to the Contract specifications. The experiences with these four wells allegedly gave Conoco and Vista reason to be concerned about the remaining 46 wells installed under the Contract as well as other parts of the groundwater monitoring system which the Contract was designed to provide.

7. G & M had a consultant monitor the plug and abandonment procedures for the well known as VD–1.

8. On August 27, 1990, Conoco/Condea and G & M entered into the Groundwater Wells Interim Agreement ("Interim Agreement"). The parties agree that one of the purposes of the Interim Agreement was to allocate the costs of plugging and abandoning "suspect" wells among the parties. The parties do not agree on other purposes of the Interim Agreement.

9. G & M was paid in full for its work and services under the Contract.

10. G & M held itself out to Conoco as being knowledgeable and skillful in the practice concerning groundwater well monitoring system design and installation.

11. Conoco/Condea made demand upon G & M to pay for the damages claimed to arise from the breach of contract claims.

12. Construction of the groundwater monitoring wells installed by G & M was represented to be substantially completed on July 23, 1985.

13. The Conoco/Condea state law causes of action asserted in this case are substantially the same state law causes of action asserted in the state court action.

14. When Conoco/Condea signed the Interim Agreement on August 27, 1990, they had reason to suspect there were defects in many of the G & M wells.

15. The state court action was filed on April 16, 1993.

16. The original counterclaim in this case was filed on June 24, 1997.

17. The state court action was dismissed on November 14, 1997.

## IV. OTHER UNDISPUTED FACTS

The pleadings and documents presented in this case show that Conoco/Condea commenced its remediation program in late 1986, early 1987. The program was commenced by "selecting an area of contamination and installing a remediation system to recover [harmful] contaminants ..." "The ... tank farm area [was selected] as the location for [Conoco/Condea's] pilot remediation system." Also during this time period, the primary activity conducted by Conoco/Condea was an investigation of the rate and extent of contamination.

It is also undisputed that Conoco/Condea's original federal counterclaim, sought only a CERCLA liability determination, contribution under CERCLA and a declaratory judgment that G & M was responsible for further response costs that might be incurred by Conoco/Condea. (*See Defendant's Original Answer and Counterclaim, Inst. # 5*). Therefore, while the pleadings assert claims arising out of the same nucleus of facts, as a related state lawsuit, no state law cause(s) of action were asserted in the counterclaim. Cónoco/Condea's state law claims of breach of contract and negligence were simultaneously pending in the 165th Judicial District Court of Harris County. However, on November 12, 1997, this Court entered its Memorandum Order (Inst.# 19) concerning Conoco/Condea's counterclaim. In that document, the Court held that Conoco/Condea was the owner and operator of the LCCC facility as contemplated and defined by federal law. *See* 42 U.S.C. § 9601(20)(A).

The Court also considered Conoco/Condea's admissions in state court on this matter and held that Conoco/Condea are " 'covered persons' under section 107 of CERCLA."

The Court then permitted Conoco/Condea 20–days from the issuance of its Order for Conoco/Condea to replead its counterclaim, if any it had. Within 20–days, Conoco/Condea asserted the CERCLA and state law claims previously identified herein.

In the meantime, the related state court action was dismissed on November 14, 1997, shortly after this Court dismissed Conoco/Condea's CERCLA counterclaim. Therefore, from November 14, 1997, to December 23, 1997, Conoco/Condea had no cause of action officially before any Court.[2]

An examination of the state court pleadings, the original petitions (filed in both the 234th and 165th District Courts) and all amended pleadings, filed in the 165th District Court reveals claims of breach of contract, breach of warranty, and negligence. On October 27, 1997, after the empaneling of a jury and at the close of all evidence, Conoco/Condea filed its Notice of Non–Suit, which was granted by Order of Dismissal on November 14, 1997. Thus, it is undisputed that Conoco/Condea's state suit was dismissed before it filed its amended counterclaim. (Between November 14 and December 2, 1997, no state suit or federal counterclaim was pending.)

## V. CONTENTIONS AND DISCUSSION

The Court turns now to Conoco/Condea's counterclaim and G & M's defenses. The parties agree that the determination of the question of whether the "discovery rule" applies to Conoco/Condea's case, is a question of law. A discussion concerning this rule is appropriate because G & M contends that the four-year and two-year Statutes of Limitations bar Conoco/Condea's state law claims.

### A. *The Statutes of Limitations and State Law Claims*

Conoco/Condea contends that G & M is guilty of breach of contract, negligence, fraud and breach of warranty. It is undisputed that the contract that is the subject of this dispute was executed on March 12, 1985. It is also undisputed that no suit was filed by

---

**2.** The Court recognizes that Conoco/Condea filed its motion and First Amended Counterclaim on December 2, 1997 (Inst.# 22). However, the Order granting leave was not entered under December 23, 1997.

Conoco/Condea until April 16, 1993. Thus, in the ordinary cause of proceedings, the contract, negligence, fraud and breach of warranty claims are barred by March 12, 1989. *See* Civ. Prac. & Rem.Code §§ 16.003 and 16.004 (Vernon's 1986). The facts are undisputed and show that the design and construction performed by G & M were completed in July of 1985, therefore, the claims are time barred.

Conoco/Condea argues, however, that the claims are not barred because of the applicability of the "discovery rule" and the intervention of a "Ground Water Wells Interim Agreement" ("Interim Agreement") executed by the parties on August 27, 1990. The Court will address these contentions in turn.

### 1. *The Discovery Rule Application*

■ According to Conoco/Condea's argument, the discovery rule "provides that the limitations period [does] not begin to run on any of [its] claims until May 1988," citing *Enterprise–Laredo Assoc. v. Hachar's Inc.*, 839 S.W.2d 822, 837 (Tex.App.—San Antonio 1992, writ denied). For purposes of discussion, the Court accepts Conoco/Condea's statement of the time that it discovered the defects as well as its statement of the applicable law. However, as G & M asserts, the discovery rule does not apply to claims for breach of warranty. *See Trinity River Authority v. URS Consultants*, 889 S.W.2d 259 (Tex.1994). Therefore, Conoco/Condea's breach of warranty claims, first raised on December 2, 1997, are not saved by the discovery rule. As well, the discovery rule does not save Conoco/Condea's remaining state law claims. Even assuming that Conoco/Condea only discovered G & M's contractual failings in 1988, Conoco/Condea was required to file a suit at that time.[3] Conoco/Condea argues, nevertheless, that the 1990 Interim Agreement extends or tolls the running of the various statutes of limitations. The Court will review the terms of the Interim Agreement for construction purposes.

### 2. *The Interim Agreement*

■ On August 27, 1990, Conoco/Condea and G & M entered into an Interim Agreement, designed to be an "accord and satisfaction of past disputes and *suspending* potential future disputes concerning the parties' respective responsibilities for the payment of certain expenses..." *See* Interim Agreement (Ex. B–2 to G & M Motion for Partial Summary Judgment. Inst. # 35) However, the Interim Agreement specifically states that it is not designed to resolve any dispute or claim for damages that is being resolved by the "Well Assessment and Remediation provision." *See* Interim Agreement p. 2(H). The term "Well Assessment and Remediation" means the "naturally agreed-upon activities for the evaluation of ground water monitoring well construction usefulness ... [and] the plugging and abandonment of such wells ...." Thus, the Court holds that potential claims for damages for breach of contract, fraud, negligence and breach of warranty, are not covered by the Well Assessment and Remediation language. Moreover, the Agreement calls for a criterion to be completed within 60–days in order to effectuate the agreement. *See* Interim Agreement p.1(D). The undisputed evidence shows that no agreement, concerning the criteria, beyond Wells WC–1, WC–2, and WC–3 was reached within the 60–day period. Thus, the Court is of the opinion that the "suspending potential future disputes" language does not toll the statutes of limitations, and for at least two reasons.

■ First, the Interim Agreement was simply an agreement to enter into an agreement(s). In *T.O. Stanley Boot Co. v. The Bank of El Paso*, 847 S.W.2d 218 (Tex.1992), the Texas Supreme Court denounced this practice. It states, "[W]here an essential term [of a contract] is open for future negotiation, there is no binding contract." *Id.* at 221. As a matter of law, the Interim Agreement is not enforceable as a contract and, therefore, does not suspend the parties

---

**3.** At the time that the parties entered into the Interim Agreement, the time within which Conoco/Condea could have filed suit for negligence

and fraud had already passed. The first three wells were plugged by May of 1988.

duties, responsibilities or liabilities under the 1985 contract. However, even if the Interim Agreement were enforceable as an agreement to enter in an agreement, provision "H" of the Agreement does not extend the statutes of limitations on *potential* claims.

■ Second, Conoco/Condea relies on the Statute of Repose for an extension of the statutes of limitations. The Statute of Repose permits a person to bring a suit for damages against licensed or registered architects, engineers · and designers who design and construct improvements to real property or equipment attached to real estate *no later than* 10–years after the improvements are completed. *See* Tex. Civ. Prac. & Rem.Code §§ 16.008 and 16.009. (Vernon's 1968) Construing the Interim Agreement as a whole, the Court concludes that the parties attempted to extend the statutes of limitations for all potential or future claims to coincide with the 10–year period provided in the Statute of Repose. Even assuming an enforceable agreement, Conoco/Condea's reliance on Provision "H" to extend the statute of limitations to 1997 is flawed. Under the Statute of Repose, Conoco/Condea was required to bring a suit on or before July 23, 1995. Although a suit was commenced in 1993, that suit was abandoned in 1997. After abandoning the 1993 suit, no claim was pending until December 1997. At the time that Conoco/Condea abandoned its state court suit, the time for bringing a suit of any nature had expired. Therefore, for the reasons stated, provision "H" does not alter the results earlier stated.

It is compelling that Conoco/Condea had a trial on its state law claims that concluded in November 1997. After the state law case was submitted to the jury and/or court, Conoco/Condea took a unilateral non-suit before a verdict or judgment could be entered. However, once the Order of Dismissal was entered, no state law claims were pending in any court. G & M asserts that Conoco/Condea could not unilaterally non-suit its case without suffering a dismissal with prejudice. This Court agrees. Case law and the rules of procedure do not permit a non-suit without prejudice where the parties have presented the evidence. *Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 854 (Tex.1995); *See O'Brien v. Stanzel*, 603 S.W.2d 826, 828 (Tex. 1980); *Baldwin v. Klanke*, 877 S.W.2d 879 (Tex.App.—Houston [1st Dist.] 1994, no writ); Tex.R. Civ. P. 162 and 163 (Vernon Supp.1997) Therefore, the Court holds that the causes of action for which non-suit was taken in state court are also barred.

## VI. G & M'S CERCLA LIABILITY

■ The final cause of action asserted by Conoco/Condea against G & M arises under CERCLA. Conoco/Condea's CERCLA claims are asserted under the statute and are limited to contribution under 42 U.S.C. § 9613(f)(1). It is Conoco/Condea's position that G & M is a "covered person" either as an "operator," "arranger" or "transporter" of hazardous substances, within the meaning of CERCLA § 9607. The CERCLA statute limits liability to:

(1) the owner and operator of ... a facility,

(2) any person who, at the time of disposal of any hazardous substance, owned or operated any facility ...

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances ...

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities ... from which there is a release, or a threatened release which causes the incurrence of response costs ...

*See* 42 U.S.C. § 9607(a).

It is undisputed, and the Court has previously held, that Conoco/Condea owned and operated the LCCC facility at all times when a release of a hazardous substance occurred. It is also undisputed that G & M was never the owner or operator of the LCCC facility. Thus, Conoco/Condea's success under a § 9613 claim for contribution rests on whether G & M is a "covered person" under § 9607. The evidence clearly establishes that G & M did not operate, arrange for, or transport hazardous substances. G & M was merely an environmental contractor em-

ployed to investigate and assist in constructing a facility for remedying contamination already in the soils. Thus, the Court concludes that G & M was not a covered person as intended by CERCLA. G & M also asserts that the statute of limitations bars Conoco/Condea's contribution claim. Concerning this issue, the parties dispute whether the three (3) or six(6) year Statute of Limitations applies. The Court will also address this issue.

### A. Is Conoco/Condea's CERCLA Claim Time Barred?

■ An action for the recovery of costs that is an "initial action" based on remediation must be commenced within six (6) years after initiation of physical on-site construction of the remedial action. 42 U.S.C. § 9613(g)(2). However, the statute provides an exception. The exception provided permits a suit to be brought within three (3) years *after* the completion of the removal action. The term "removal action" refers to the suit for the "cleanup or removal of released hazardous substances." See § 9601(23). The term "remedial action" means an action taken instead of or in addition to a removal action. *Id.* at (24). Thus, the court concludes that the statute permits the owner or operator of a facility such as the LCCC to bring an initial action either for removal costs and remedial cost "within six (6) years after initiation of physical on-site construction of the remedial action occurs." *See* § 9613(g)(2)(B).

In the case at bar, Conoco/Condea initiated remedial on-site construction to remediate the soils and water in 1987–88. In fact, it was G & M that engineered and designed the system of wells for monitoring and recovering EDC contaminates. In 1987, Conoco/Condea retained I.T. Corporation to began construction of the remediation system for remediating the ground water under the LCCC pursuant to a 1984 state inquiry or order served on Conoco/Condea. Therefore, there is undisputed evidence that Conoco/Condea began remediation in 1987. It is also undisputed that remediation continues, even today.

Conoco/Condea is currently involved in removal and remediation. Therefore the statutory language concerning the initiation of a removal action or a remediation action within three (3) years after the completion of a removal action is inapposite to the facts at hand. Conoco/Condea's action to recover costs regarding the removal and remediation of EDC contaminates must have been commenced by 1993. The first occasion that a CERCLA claim was made, however, was the filing of a counterclaim on June 24, 1997, in this suit. Thus, the counterclaim is barred by the six (6) year Statute of Limitations.

Finally, in response to G & M's alternative argument that it is not a responsible party under CERCLA provisions. The Court has addressed the issue, but will expand on that opinion here. The Court is of the opinion that the nature and scope of G & M contract with Conoco/Condea, as presented in this case, does not bring G & M within the ambit of section 9607 as one who disposed of, treated, transported or accepted for transport, a hazardous substance. Quite clearly, G & M's role was to remedy already apparent CERCLA violations.

Conoco/Condea argues, however, that the construction of the Wells was so poor that G & M exacerbated Conoco/Condea environmental problem. Therefore, they stand ready to quantify the nature and scope of the alleged exacerbation. This argument overlooks the fact that all of the work done by G & M was as agent or contractor for Conoco/Condea, and under Conoco/Condea's supervision. The type and location of the wells drilled were directed by Conoco/Condea and the state of Louisiana. Moreover, other contractors have drilled wells that were not a part of those installed by G & M. Thus, the problem of migration of Conoco/Condea's hazardous waste cannot be laid at the feet of G & M, because it was never the intent of G & M or Conoco/Condea that G & M arrange for, manage or transport Conoco/Condea's hazardous waste.

The Court concludes that summary judgment is appropriate as to all issues raised in Conoco/Condea's counterclaim and, there-

fore, G & M's motion for summary judgment is Granted. *See* Fed.R.Civ.P. 56(c).