# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-08-00559-CV

Matl Construction Company f/k/a Stewart-Matl, Ltd.;
and Travelers Casualty and Surety Company of America, Appellants

v.

Jim Connelly Masonry, Inc., Appellee

FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT
NO. 26,611, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING

# D I S S E N T I N G   O P I N I O N

The dispositive issue in this appeal turns on a fact question—whether Matl and JCM formed the subcontract that included an agreement to arbitrate (the "Subcontract").[1] After conducting an evidentiary hearing, the district court denied appellants' motion to compel arbitration, impliedly finding that the parties did not. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (when trial court does not make findings of fact or conclusions of law, "all facts necessary to support the judgment and supported by the evidence are implied"); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) ("The judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence."). That the parties' conduct evidenced an

---

[1] I refer to appellant Matl Construction Company f/k/a Stewart-Matl, Ltd. as "Matl"; appellant Travelers Casualty and Surety Company of America as "Travelers"; and appellee Jim Connelly Masonry, Inc., as "JCM."

agreement between the parties for JCM to perform masonry work as a subcontractor on the project is distinct from the dispositive question of fact that the district court impliedly resolved—whether Matl and JCM formed the Subcontract as the agreement controlling their relationship. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221-22 (Tex. 1992); *Ishin Speed Sport, Inc. v. Rutherford*, 933 S.W.2d 343, 348 (Tex. App.—Fort Worth 1996, no writ) (whether conduct exhibits acceptance is question of fact).

Without citing authority, the majority sidesteps our standard of review of implied findings and concludes "as a matter of law" that a valid arbitration agreement exists. Because the majority fails to correctly apply the no-evidence standard of review to the district court's implied finding, I respectfully dissent.[2] *See Trammell v. Galaxy Ranch Sch., L.P. (In re Trammell)*, 246 S.W.3d 815, 820 (Tex. App.—Dallas 2008, no pet.) (in an interlocutory appeal from an order denying arbitration under the Texas Arbitration Act (TAA), an appellate court applies a no-evidence standard to the trial court's factual determinations and a *de novo* standard to legal determinations); *Dewey v. Wegner*, 138 S.W.3d 591, 597 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (same); *but see Associated Glass, Ltd. v. Eye Ten Oaks Invs., Ltd.*, 147 S.W.3d 507, 512 (Tex. App.—San Antonio 2004, orig. proceeding) (applying abuse of discretion standard to trial court's

---

[2] In contrast with our standard of review of an implied finding of fact from an order denying arbitration, the interpretation of unambiguous agreements and the determination of an arbitration agreement's validity are legal questions that we decide as a matter of law. *See In re D. Wilson Construction Company*, 196 S.W.3d 774, 781 (Tex. 2006) (whether written contracts between the parties contained arbitration provisions and, if so, whether the provisions were ambiguous were questions of law); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227-28, 230 (Tex. 2003) (court interpreted agreement to determine whether reciprocal promises to arbitrate were sufficient consideration to support enforcing arbitration agreement; court found clause in agreement ambiguous and remanded to trial court to determine "what the parties intended").

2

determination regarding the existence of an arbitration agreement under the TAA); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 810, 827 (Tex. 2005) (no-evidence standard of review).[3] Crediting the evidence before the district court favorable to the finding, I would conclude that the evidence supports the implied finding. *See Trammell*, 246 S.W.3d at 820; *see also Worford*, 801 S.W.2d at 109 (in determining whether some evidence supports implied finding, "it is proper to consider only the evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in its nature") (citation omitted).

I begin by reviewing the applicable principles of law. Courts generally apply ordinary state-law principles that govern the formation of contracts when deciding whether parties agreed to arbitrate. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227-28 (Tex. 2003); *see American Med. Techs., Inc. v. Miller*, 149 S.W.3d 265, 273 (Tex. App.—Houston [14th Dist.] 2004, consolidated appeal and orig. proceeding) ("[W]hen the very existence of an agreement is disputed, a court, not an arbitrator, must decide at the outset whether an agreement was reached, applying state law principles of contract."); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 171.021 (West 2005) (if party opposing an application to compel arbitration "denies the existence of the agreement, the court shall summarily determine that issue").

---

[3] An appellate court will sustain a no-evidence point of error when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *See City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *see also Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (party with burden of proof attempting to overcome adverse finding of fact must establish issue as a matter of law; point of error should be sustained only if the contrary proposition is conclusively established).

Under Texas contract law, parties form a binding contract when the following are present: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution of the contract with the intent that it be mutual and binding. *KW Constr. v. Stephens & Sons Concrete Contrs. Inc*., 165 S.W.3d 874, 883 (Tex. App.—Texarkana 2005, pet. denied); *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App.—San Antonio 1997, no writ). The material terms of the contract must be agreed upon before a contract is binding on the parties. *See T.O. Stanley Boot Co.*, 847 S.W.2d at 221; *see also Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) ("Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind."). Whether or not the parties formed a contract is a fact question. *See T.O. Stanley Boot Co.*, 847 S.W.2d at 221-22 (applying no-evidence standard of review to determination of whether parties had contract and concluding that "alleged contract failed for indefiniteness"); *Harris v. Balderas*, 27 S.W.3d 71, 77-79 (Tex. App.—San Antonio 2000, pet. denied) (issue whether evidence raised a fact issue regarding the existence of an oral settlement agreement and concluding that "summary judgment evidence raises a fact issue regarding whether the parties had a meeting of the minds on the claims to be settled").

Because appellants sought to compel arbitration, it was their burden to prove the parties' formation of the Subcontract. *See In re Oakwood Mobile Homes, Inc*., 987 S.W.2d 571, 573 (Tex. 1999) ("A party seeking to compel arbitration must establish the existence of an arbitration agreement, and show that the claims raised fall within the scope of that agreement."); *Miller*, 149 S.W.3d at 270 (burden to show existence of valid arbitration agreement on party seeking to

compel arbitration); *In re Koch Indus., Inc.*, 49 S.W.3d 439, 444 (Tex. App.—San Antonio 2001, orig. proceeding) ("The party seeking arbitration has the initial burden to present evidence of an arbitration agreement.").[4] Further, when a court is called upon to determine whether the parties have agreed to arbitrate, a court does not resolve doubts or indulge a presumption in favor of arbitration. *See In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 876 (Tex. App.—El Paso 2005, orig. proceeding); *In re Rolland*, 96 S.W.3d 339, 345 (Tex. App.—Austin 2001, orig. proceeding) ("[N]o presumption of arbitrability arises unless the trial court finds an enforceable arbitration agreement."); *In re Jebbia*, 26 S.W.3d 753, 757 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding). With these principles of law in mind, I turn to a review of the evidence before the district court at the hearing on appellants' motion to compel arbitration.

James Connelly, the president of JCM, and Daniel Matl, who was Matl's project manager, both testified at the evidentiary hearing on the motion to compel arbitration. Mr. Connelly testified that (i) the Subcontract was "unacceptable," he signed the Subcontract with the notation "w/attachment," and returned the Subcontract to Matl with the referenced attachment (the "JCM attachment"); (ii) he assumed that JCM had a written subcontract with Matl that included the JCM attachment when JCM proceeded with the masonry work on the project and submitted paperwork

---

[4] Appellants contend that the burden of proof was on JCM to prove the non-existence of an agreement, citing *Hearthshire Braeswood v. Bill Kelly Co.*, 849 S.W.2d 380, 386 (Tex. App.—Houston [14th Dist.] 1993, writ denied). But our sister court in that case was addressing the burden of proof as to defensive issues such as fraud or unconscionability to the enforcement of an arbitration agreement. *See id.* Once the party seeking to compel arbitration has satisfied its burden to prove that an agreement exists, the burden shifts to the party seeking to avoid arbitration to prove a defense such as fraud. *See In re Koch Indus., Inc.*, 49 S.W.3d 439, 444 (Tex. App.—San Antonio 2001, orig. proceeding).

for payment, and (iii) Matl did not communicate that the JCM attachment was not acceptable.[5]  Mr. Connelly further testified that JCM's acceptance of the Subcontract was conditioned on Matl's acceptance of the terms in the JCM attachment:

> Q.  When you sent the subcontract back to [Matl] did you also send the [JCM attachment]?
>
> A.  Yes.
>
> Q.  Was your willingness to sign [the Subcontract] conditioned upon the acceptance of the terms in [the JCM attachment]?
>
> A.  Yes.
>
> Q.  If those were not acceptable to [Matl] would you have accepted the form of the subcontract without them?
>
> A.  No.  The form of the contract is unacceptable without the attachment.

Mr. Connelly testified that the terms and provisions contained in the Subcontract were unacceptable because there were terms in the Subcontract "that seemed to favor the general contractor in a way that were unacceptable."

Mr. Connelly also testified that there was no "meeting of the minds" between Matl and JCM as to the terms of the Subcontract:

---

[5]  Prior to JCM's discovery that Matl did not accept the JCM attachment, counsel for JCM sent letters to Matl, Travelers, and Bastrop County seeking alleged amounts due to JCM for work performed, stating in the letters that JCM had a written contract with Matl and attaching portions of the Subcontract to the letters.  Mr. Connelly also executed sworn statements of account that reference the Subcontract.

Q.      . . . Based upon the position that has been taken by [Matl] in that the [JCM attachment] was not a part of the written subcontract, is it your position or the position of [JCM] that there was not a meeting of the minds in regard to the terms of the subcontract?

A.      There was no meeting of the minds without the attachment.  The contract was only acceptable if it included the attachment.[6]

Mr. Matl testified that he received the signed Subcontract from JCM with the notation on the signature line "with attachment" and the JCM attachment, that he "had no authorization to sign" the Subcontract with changes, and that he did not communicate to JCM that Matl did not accept the JCM attachment before he signed the Subcontract on behalf of Matl.  Mr. Matl also testified concerning his authority to agree to modifications to the Subcontract and terms in the JCM attachment that would have modified the Subcontract, including the notice provision and the right to the possession of JCM's equipment in the event of defective work:

Q.      In any event, when you received [the JCM attachment] you understood that these were revisions that Mr. Connelly wanted to make to the subcontract?

A.      Yes, sir.

---

[6] JCM also filed an affidavit from Mr. Connelly with its response to the motion to compel. Mr. Connelly averred similarly to his testimony at the hearing:

Because Matl is taking the position that it did not accept the JCM attachment, JCM and Matl did not agree upon material terms in the Proposed Subcontract.  Since Matl did not accept the terms of the JCM attachment, the terms of the Proposed Subcontract without the terms of the JCM attachment, were not and are not acceptable to JCM.  Because JCM and Matl did not agree upon material terms of the Proposed Subcontract, it is JCM's position that the Proposed Subcontract does not constitute a written contract between JCM and Matl and that a written contract between JCM and Matl that contains a binding arbitration agreement does not exist.

Q.   And the items on here change are what you believe to be material provisions in your subcontract that you weren't—excuse me—that you weren't willing to change; is that correct, sir?

A.   I'm not so certain that there's anything necessarily in here that we're unwilling to agree to. It was just not—not an attachment or a part of our subcontract sent to him and I had no authorization to sign something that was returned contrary to the text in the transmittal telling him do not make changes to the contract.

Q.   Looking at [the JCM attachment], Mr. Matl, there's some requirement in there concerning the period of time within which notice is to be given of any defective or improper work; is that correct?

A.   Yes.

Q.   And you on behalf of [Matl] consider the notice provision in your subcontract an important provision, do you not, sir?

A.   Yes, sir.

* * *

Q.   Mr. Matl, looking again at [the JCM attachment], one of the changes Mr. Connelly was requesting on behalf of [JCM] was that they would be allowed to take all their vehicles, equipment and supplies with them when they left the project; is that correct?

A.   Yes sir.

Q.   And you consider that a material provision—or material change to your subcontract because your subcontract contains a provision that allows you to take over that equipment; is that correct?

A.   Yes sir.

Consistent with Mr. Matl's testimony, the position of Matl and Travelers as stated in their motion to compel arbitration was that Matl never agreed to the JCM attachment: "Matl never agreed to or signed the attachment." In the motion, they argued:

8

JCM maintains that its acceptance of the subcontract was conditioned upon the inclusion of an attachment to the subcontract. Matl disagrees and contends that the terms of the contract under which the parties performed at the Project are limited to the subcontract agreement Matl originally forwarded to JCM. The subcontract agreement specifically lists all the documents that comprise the subcontract. The attachment JCM seeks to include is not listed. Rather than attempt to negotiate for the inclusion of the attachment, JCM included a notation next to its signature that indicated its desire to include the attachment. Matl maintains that the subcontract consists of all the documents specifically listed in the document itself.

\* \* \*

Despite the fact that a written contract exists in this case, JCM has chosen not to sue on that contract. Matl forwarded a subcontract agreement to JCM prior to the start of JCM's work. JCM signed that contract. In its signature line, JCM included a notation indicating that JCM was includ[ing] an attachment with its signed contract. Matl never agreed to or signed the attachment.

Stepping into the shoes of a factfinder, the majority concludes that (i) "there is no dispute that JCM and Matl did form a contract,"[7] (ii) "the terms of that contract, based on the undisputed evidence of the parties' conduct, necessarily includes the Subcontract," and (iii) "the parties' conduct objectively manifested mutual assent to the subject matter and essential terms of the Subcontract—JCM would provide masonry materials and labor on the project, strictly comply with the project's 'Terms and Conditions,' in exchange for payment from Matl" because "JCM repeatedly

---

[7] The majority states that JCM's position before the district court was "that no contract had ever been formed" and concludes that "[a]s the parties' positions have been refined through appellate briefing and argument, . . . there is no dispute that JCM and Matl did form a contract that governed their respective rights regarding JCM's work on the project." The majority mischaracterizes JCM's position. JCM pleaded that, based on Matl's position that the JCM attachment was not part of the Subcontract, there was no "agreed upon, written subcontract pertaining to the Project" between the parties and that the relationship between the parties was controlled by no contract or an oral contract. JCM's claims included suit on the bond, quantum meruit, breach of oral contract, conversion, and equitable relief to recover its equipment.

9

invoked rights under the Subcontract."[8] The majority concludes that "even if JCM's response to the Subcontract was a 'counter-offer' that was accepted through Matl's performance,[ ] the parties would have formed a contract that included the same arbitration provision contained in Matl's original offer."

In reaching its conclusions, the majority ignores its role as a reviewing court and disregards evidence favorable to the district court's implied finding. *See Worford*, 801 S.W.2d at

---

[8] Appellants did not plead waiver or estoppel, but answered by general denial. *See* Tex. R. Civ. P. 94 (affirmative defenses of waiver and estoppel must be pleaded). The majority's reliance on JCM's conduct "invok[ing] rights under the Subcontract" tracks the appellants' argument of waiver and estoppel that appellants raise for the first time in their reply brief. To the extent appellants raise new issues in their reply brief, however, they have not preserved these issues for this Court's review. *See* Tex. R. App. P. 38.1, 38.3; *Dallas Co. v. Gonzales*, 183 S.W.3d 94, 104 (Tex. App.—Dallas 2006, pet. denied) (rules of appellate procedure do not allow an appellant to raise new issue in reply brief); *Howell v. Texas Workers' Comp. Comm'n*, 143 S.W.3d 416, 439 (Tex. App.—Austin 2004, pet. denied) (same). In their reply brief, appellants contend that JCM has "waived any right it had to say the Subcontract was unacceptable without the attachment" because JCM began work on the project without inquiring with Matl about the existence of a signed attachment and that "JCM's actions conform, without exception, to the direct benefits theory of estoppel." *See In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 739 (Tex. 2005) (discussing the direct benefits theory).

The two cases cited by the majority to support its conclusions from the parties' conduct are inapposite. *See Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006); *Texas Disposal Sys. Landfill, Inc. v. Waste Mgt. Holdings, Inc*., 219 S.W.3d 563, 589 (Tex. App.—Austin 2007, pet. denied). In *Fiess*, the issue was limited to the construction of an insurance policy provision. 202 S.W.3d at 746. In that context, the Texas Supreme Court stated that in construing contract provisions, the "parties' intent is governed by what they said, not by what they intended to say but did not." *Id*. In *Texas Disposal*, the appeal was from a summary judgment ruling that dismissed the appellants' claim of tortious interference with an existing contract. 219 S.W.3d at 590. This Court upheld the summary judgment, concluding that there was no evidence that a contract existed to support the tortious interference claim. *Id*.

10

109; *Trammel*, 246 S.W.3d at 820.[9] The majority disregards (i) the testimony at the evidentiary hearing that the parties did not agree to essential terms and conditions of the Subcontract, (ii) Mr. Connelly's testimony that the Subcontract without the attachment was unacceptable because it contained terms "that seemed to favor the general contractor in a way that were unacceptable," and (iii) Matl's conduct inconsistent with its assent to the terms of the JCM attachment, including its refusal to provide the required notice to JCM to replace or repair defective work and its refusal to allow JCM to take its vehicles, equipment, and supplies when JCM left the project. Crediting this evidence, the trial court could have found that JCM rejected the Subcontract and made a counteroffer that Matl did not accept. *See Worford*, 801 S.W.2d at 109; *Trammel*, 246 S.W.3d at 820.

Based on the parties' pleaded positions and the evidence before the district court that Matl and JCM did not reach a "meeting of the minds" as to material terms of the Subcontract, I would conclude there is some evidence to support the implied finding that Matl and JCM did not form the Subcontract as the agreement that controlled their relationship. *See T.O. Stanley Boot Co.*, 847 S.W.2d at 221 (parties must agree to material terms to form binding contract); *Worford*, 801 S.W.2d at 109; *Trammel*, 246 S.W.3d at 820. Because there is some evidence to support the

---

[9] The majority finds significant that the JCM Attachment "did not seek to modify the Subcontract's arbitration provision." The applicable clause in the Subcontract provided that, if efforts to resolve disputes through negotiation failed, Matl could elect to have the dispute mediated under the Commercial Mediation Rules of the American Arbitration Association and, in the event the mediation was unsuccessful, Matl then had the right to demand arbitration. In contrast, the JCM attachment included a promise by Matl to "[g]o to a mutually agreed-upon professional mediator in a county in which the job is located with us if unresolvable disputes should occur." The inconsistent alternative dispute resolution clauses are further support for the implied finding that Matl and JCM did not form the Subcontract as the agreement that controlled their relationship.

11

implied finding, I would affirm the district court's order denying appellants' motion to compel arbitration.  I, therefore, respectfully dissent.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Filed:   July 31, 2009