**Opinion filed August 21, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-15-00011-CV

_____

## IN THE INTEREST OF A.L.P., E.R.C., & J.C.C., CHILDREN

**On Appeal from the 106th District Court**

**Gaines County, Texas**

**Trial Court Cause No. 13-07-16646**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order of termination of the parental rights of the mother and father of A.L.P., E.R.C., and J.C.C. Both parents appeal. On appeal, each parent challenges the legal and factual sufficiency of the evidence to support termination. We affirm.

I. *Termination Findings and Standards*

A jury trial was conducted in this case, and the jury found that the parent-child relationship between each parent and the children should be terminated. Based on the jury's verdict, the trial court entered an order in which it terminated the parents' rights to the children. In the order, the trial court found that both

parents had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children and that both parents had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E) (West 2014). Additionally, the trial court found that the father had failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent for abuse or neglect. *See id.* § 161.001(1)(O). The trial court also found that termination of each parent's parental rights would be in the best interest of the children. *See id.* § 161.001(2).

The termination of parental rights must be supported by clear and convincing evidence. FAM. § 161.001. To terminate parental rights under Section 161.001, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. *Id.*

To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

## II. *Evidence at Trial*

The evidence at the final hearing showed that the children had been removed from their parents' care after four-month-old J.C.C. was severely injured. The parents took J.C.C. to a hospital on June 30, 2014, with life-threatening injuries. She underwent emergency neurosurgery and remained in the hospital for six weeks.

Dr. Patti Patterson, an expert in child abuse pediatrics, testified that J.C.C. had bleeding around the brain, damage to the brain, retinal hemorrhages of both eyes, and fractured ribs. The injuries to the ribs consisted of three or four posterior fractures; it was "very unlikely" that these fractures resulted from a fall. Dr. Patterson estimated that the fractures, which had already begun to heal, had occurred about two weeks prior to J.C.C.'s hospitalization and that the brain injury

3

was probably inflicted shortly before her first seizure—which occurred the night before she was taken to the hospital—because an "injury of this severity almost always becomes immediately symptomatic." Dr. Patterson indicated that the type of retinal hemorrhages suffered by J.C.C. "are seen only in severe trauma, like, for example, a car wreck, a crush kind of injury or in abusive head trauma in children." Based on the "constellation of injuries" suffered by J.C.C., Dr. Patterson opined that J.C.C.'s injuries were "caused by child abuse." As a result of her injuries, J.C.C. is blind in one eye, has very limited vision in the other eye, and has severe "global developmental delays." At the time of trial, J.C.C. was twenty-one months old but was still nonverbal, could not feed herself, and could not grasp a toy to pick it up. J.C.C. may never walk, may never talk, and will probably be significantly dependent upon caregivers for the rest of her life.

The parents denied that either of them had caused J.C.C.'s injuries. The father informed the police that J.C.C.'s injuries stemmed from a "hard bowel movement." The mother told the police a similar story. At trial, the father surmised that J.C.C.'s injuries stemmed from a combination of a hard bowel movement and an incident that allegedly occurred about twelve days prior to J.C.C.'s hospitalization when then seven-year-old A.L.P. dropped J.C.C. The mother testified at trial that she had done some research and had concluded, contrary to the opinions of J.C.C.'s physicians, that J.C.C. had had an aneurism.

A.L.P. said that she had seen her father bang J.C.C.'s head on the screen door "a lot." A.L.P. said that her mother told her that the father had also done that to A.L.P. when she was a baby. According to A.L.P., the father also "chokes" J.C.C. and squeezes her neck too hard. A.L.P. recalled one incident in which her father squeezed J.C.C.'s neck until J.C.C.'s whole body turned red. A.L.P. said that the mother told the father, "Stop choking her. You'll kill her." The children's maternal grandmother testified that the father has a "narcissistic attitude" and a

4

"violent temper." The Department presented evidence of domestic violence between the parents and of the father's harsh spanking of A.L.P. with a belt, which had left marks on A.L.P.'s butt and back. A.L.P. indicated that her mother was usually at home when A.L.P. got into trouble.

The father had a criminal history that included two 2004 convictions for the offense of child abuse in Wyoming. The mother acknowledged that, at the time she married the father, she was aware that the father had been arrested and charged with child abuse in Wyoming. The mother was aware that, pursuant to a Wyoming court order, the father could not be left alone with children while he was on probation. The mother testified that she did not leave the father alone with the children; she was always at home. At the time of the termination hearing, both parents had been indicted for the offense of aggravated assault and the offense of injury to a child based upon the injuries to J.C.C.

After initially being placed in foster care for several months, A.L.P. and E.R.C. were placed in the home of their maternal grandmother. Testimony at trial showed that, although A.L.P. and E.R.C. still loved their mother, they had expressed no desire to leave the grandmother's home or even to have regular contact with the mother. A.L.P. and E.R.C. love their grandmother and want to stay with her.

J.C.C. was placed in a therapeutic foster home where all of her needs were being met. She had formed a close bond with her foster parents, and they expressed a desire to adopt her. The foster parents permitted J.C.C. to visit her sisters and maternal grandmother.

The children's guardian ad litem, the Department's conservatorship worker, the maternal grandmother, and a licensed professional counselor testified that termination of both parents' rights would be in the best interest of the children.

The Department's plan for the children was for them to remain in their respective homes and be adopted.

### III. *Father's Issues*

The father presents two issues for review. In his first issue, the father challenges the legal and factual sufficiency of the evidence to support the findings under Section 161.001(1)(D), (E), and (O). In his second issue, the father challenges the sufficiency of the evidence to support the best interest finding.

*A. Findings Under Section 161.001(1)*

With respect to the first issue, we hold that there was clear and convincing evidence from which the trier of fact could reasonably have formed a firm belief that the father engaged in conduct that endangered the physical or emotional well-being of the children. FAM. § 161.001(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Domestic violence may constitute evidence of endangerment. *J.O.A.*, 283 S.W.3d at 345; *C.J.O.*, 325 S.W.3d at 265.

In this case, there was evidence that the father engaged in domestic violence, caused severe injuries to J.C.C. when she was only four months old, and physically abused A.L.P. The evidence also showed that the father had previously been

6

convicted of child abuse. The evidence is legally and factually sufficient to support the finding under Section 161.001(1)(E) because the father engaged in a voluntary, deliberate, and conscious course of conduct that endangered the children's well-being. Because we find the evidence sufficient to support termination of the father's parental rights under subsection (E), we need not address his arguments challenging the sufficiency of the evidence to support termination under subsections (D) and (O). *See* TEX. R. APP. P. 47.1. The father's first issue is overruled.

*B. Best Interest: Section 161.001(2)*

We also hold that, based on the evidence presented at trial and the *Holley* factors, the trier of fact could reasonably have formed a firm belief or conviction that termination of the father's parental rights would be in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the emotional and physical needs of the children now and in the future; the emotional and physical danger to the children now and in the future; the parental abilities of the father and the children's placements; the plans for the children by the Department; the stability of the children's placements; acts and omissions indicating that the parent-child relationship was not a proper one; the domestic violence in the home; the father's criminal history, which included two convictions for child abuse; and the father's impending criminal charges for causing the severe injuries suffered by J.C.C., we hold that the evidence is sufficient to support the finding that termination of the father's parental rights is in the best interest of the children. *See id.* We cannot hold that the finding as to best interest is not supported by clear and convincing evidence. The father's second issue is overruled.

IV. *Mother's Issues*

The mother presents two issues for review. In her first issue, she contends that the evidence is legally and factually insufficient to support the finding under Section 161.001(1)(D). In her second issue, she challenges the legal and factual sufficiency of the evidence to support the finding under Section 161.001(1)(E). The mother does not challenge the finding that termination of her parental rights is in the children's best interest.

*A. Preservation of Sufficiency Challenges*

Before reaching the merits of the mother's issues, we must address the Department's contention that the mother failed to preserve her issues for review. We agree with the Department that the mother failed to preserve her legal sufficiency complaints because this case was tried to a jury and because the mother failed to object to the submission of the issue to the jury and failed to file a motion for an instructed verdict, a motion to disregard the jury's answer, a motion for judgment notwithstanding the verdict, or a motion for new trial. *See J.P.B.*, 180 S.W.3d at 574; *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 220 (Tex. 1992). We also agree that the mother's challenges to the factual sufficiency of the evidence were not preserved for review because she did not file a motion for new trial. *See* Tex. R. Civ. P. 324(b)(2).

However, when a meritorious factual sufficiency complaint is not preserved for review in a parental termination case, the failure to preserve that complaint may constitute ineffective assistance of counsel. *In re M.S.*, 115 S.W.3d 534, 546–50 (Tex. 2003). In *M.S.*, the supreme court stated that, if counsel's failure to preserve a factual sufficiency complaint is unjustified, then "counsel's incompetency in failing to preserve the complaint raises the risk of erroneous deprivation too high, and our procedural rule governing factual sufficiency preservation must give way

8

to constitutional due process considerations." *Id.* at 549. The court expressly refused to hold that every failure to preserve a factual sufficiency issue in a parental termination case rises to the level of ineffective assistance. *Id.* Additionally, subsequent to its rulings in *M.S.* and *J.P.B.*, the supreme court determined that a provision in the Family Code was unconstitutional as applied because it precluded the parent from raising a meritorious complaint about the insufficiency of the evidence supporting the termination order. *J.O.A.*, 283 S.W.3d at 339. For these reasons, we will address the mother's challenges to the sufficiency of the evidence even though she did not follow the proper procedure to preserve them for review. *See In re C.C.B.*, No. 11-14-00100-CV, 2014 WL 5464353, at *1 (Tex. App.—Eastland Oct. 8, 2014, no pet.) (mem. op.).

*B. Findings Under Section 161.001(1)*

In this case, there was evidence that the mother and father engaged in domestic violence, that the father caused severe injuries to J.C.C. when she was only four months old, that the father physically abused A.L.P., and that the father had previously been convicted of child abuse. There was also evidence in the record indicating that the mother was not only aware of the father's prior child-abuse convictions but was also aware of the father's abuse of the children in this case. Consequently, we hold that the evidence is legally and factually sufficient to support the finding under Section 161.001(1)(E) because the mother engaged in a voluntary, deliberate, and conscious course of conduct that endangered the children's well-being. Clear and convincing evidence was presented to show that the mother engaged in conduct or knowingly placed the children with the father who engaged in conduct that endangered the children's physical or emotional well-being. The mother's second issue is overruled. Because we find the evidence sufficient to support termination of the mother's parental rights under subsection

(E), we need not address the mother's first issue challenging the sufficiency of the evidence to support termination under subsection (D). *See* TEX. R. APP. P. 47.1.

V. <em>This Court's Ruling</em>

We affirm the trial court's order of termination.


MIKE WILLSON

JUSTICE


August 21, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.