**Reversed and Rendered and Memorandum Opinion filed September 12, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00016-CV

---

### QUEENSTON BLVD 16, LLC, Appellant

### V.

### WENDY WANG AND ZEMIN HU, Appellees

---

**On Appeal from the County Civil Court at Law No. 3
Harris County, Texas
Trial Court Cause No. 1123005**

---

### MEMORANDUM OPINION

Following a jury trial, the trial court rendered a final judgment in favor appellees Wendy Wang and Zemin Hu for damages and attorney's fees based on the jury's finding that appellant Queenston Blvd 16, LLC (the builder) breached its contract with Wang and Hu by failing to return earnest money and costs for upgrades after Hurricane Harvey flooded the commercial office properties appellees contracted to purchase. Raising six points of error, the builder argues: (1) a take-nothing judgment on Wang and Hu's claims should have been rendered

by the trial court because there was insufficient or no evidence to support the jury's verdict;[1] (2) the trial court erred in granting a motion for judgment notwithstanding the verdict (JNOV) on the issue of attorney's fees and awarding attorney's fees to appellees in excess of the jury's award; and (3) the trial court erred in awarding Wang and Hu monies on deposit with the title company.

Concluding there was no evidence to support the jury's finding that the builder failed to comply with its agreements with Wang and Hu on which the judgment was predicated, we reverse the judgment of the trial court and render a take-nothing judgment on Wang and Hu's claims against the builder.

---

[1] The builder's first four points of error are duplicative:

First Point Of Error

The trial court erred in denying appellant's motion to for JNOV, to modify judgment and alternatively for a new trial [] because the contract (Pl. Ex. 3) did not permit Zemin Hu to unilaterally terminate the contract after the feasibliity [sic] period (Pl. Ex. 3 p.4 ¶ 7b), or receive upgrade refund [(]Pl. Ex. 3 p. 8 ¶ 12) and there was no evidence or insufficient evidence that defendant failed to comply with the contract with Zemin Hu (Pl. Ex. 3).

. . . .

Second Point Of Error

The trial court erred in denying appellant's motion to for JNOV, to modify judgment and alternatively for a new trial [] because the contract (Pl. Ex. 5) does not permit Wendy Wang to uniterlaterally [sic] terminate the contract after the feasibliity [sic] period (Pl. Ex. 5 p.4 ¶ 7b), or receive upgrade refund [(]Pl. Ex. 5 p. 8 ¶ 12) and there was no evidence or insufficient evidence that defendant failed to comply with the contract with Wendy Wang (Pl. Ex. 5).

. . . .

Third Point Of Error

There was no evidence or alternatively insufficient evidence of a modification of plaintiff's [Exhibit] 3 which would entitle Zemin Hu [to] a refund of his earnest money or receive an upgrade refund[.]

Fourth Point Of Error

There was no evidence or alternatively insufficient evidence of a modification of plaintiff's [Exhibit] 5 which would entitle Wendy Wang [to] a refund of her earnest money or receive an upgrade refund[.]

# I. BACKGROUND

Wang and Hu ("the buyers") signed separate real estate contracts for the purchase of commercial office condominium units ("commercial contracts") in 2017 within the same commercial office development in Harris County. The buyers were both represented by Wang's mother, Jane Zhang, as their agent. Both commercial contracts are on the Texas Association of Realtors' commercial contract form for unimproved property.

Pursuant to the commercial contracts, each of the buyers paid $5,000 in earnest money deposited with the title company, as well as an additional $7,990.00 paid directly to the seller. Both commercial contracts provided for a 45-day feasibility period, during which period the buyers were allowed the unrestricted right to cancel with a full refund, less $500. The commercial contracts do not provide any further right to terminate.

The buyers both paid additional monies for upgrades to be installed in their respective office suites. Wang paid $8,910 for upgrades and Hu paid $2,100. The commercial contracts state that upgrades are "due up-front and [] considered non-refundable." The buyers each later signed a document, that itemized the costs for the upgrades to their respective suites. After Wang paid for the cost of her upgrades, changes were made reducing the cost of the upgrades. The builder's broker agreed to remove those items and credit Wang's overpayment against her purchase cost through an amendment to the commercial contract. Wang and the builder signed an amendment to the commercial contract that provides the following: "Seller to contribute the amount of $3,180 to buyer at closing."

After the office units were flooded following Hurricane Harvey, the buyers sought to cancel their commercial contracts. They requested the return of their earnest money and upgrade costs. No agreement was reached and ultimately the

buyers filed suit to recover the money they paid.

After a jury trial, the jury found the builder failed to comply with its agreement with Hu and awarded Hu damages of (1) $2,500 for money deposited with the title company, (2) $7,499 for money deposited with the builder and (3) $2,100 for the upgrade costs. Similarly, the jury found that the builder failed to comply with its agreement with Wang and awarded Wang damages of (1) $2,500 for money deposited with the title company, (2) $7,490 for money deposited with the builder and (3) $8,910 for the upgrade costs. The buyers were also awarded attorney's fees.

After trial, the buyers filed a motion for entry of judgment. The builder responded and filed a motion for JNOV asserting that a take-nothing judgment should be entered on the buyers' claims. After the trial court rendered a final judgment on the jury verdict, the builder reasserted its legal arguments filing a postjudgment motion for new trial, motion to modify, and motion for JNOV, which were overruled by operation of law.

## II.    ANALYSIS

In its first and second points of error, the builder argues that the finding that the builder failed to comply with its contracts was not supported by legally-sufficient evidence.[2] As drafted, the builder asserts the agreement did not allow the buyers to terminate the agreement after the 45-day feasibility period or receive a refund of their upgrade costs. Further, the builder maintains buyers did not establish that any amendment to the agreement allowed them to terminate outside the feasibility period.

The builder additionally argues the jury charge did not include any questions

---

[2] The first point of error addresses the commercial contract with Hu and the second point of error addresses the commercial contract with Wang.

about contract formation. Restated, the jury was not asked if the contract included a provision that allowed the buyers to cancel the contract outside of the feasibility period or if the commercial contracts were modified. Instead, the jury was asked: "Did [the builder] fail to comply with the agreement, if any, with Zemin Hu?" The question relating to the contract between the builder and Wang is identical. Therefore, we first review the commercial contracts and consider their provisions, and then turn to the question of whether the commercial contracts were modified or amended.

## A. Standard of review

When a party challenges the legal sufficiency of the evidence supporting an adverse finding on which the party did not have the burden of proof at trial, the party must demonstrate no evidence exists to support the adverse finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Under a legal-sufficiency review, we consider all of the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable fact-finder could not. *City of Keller*, 168 S.W.3d at 807, 822, 827. We cannot substitute our judgment for that of the fact-finder if the evidence falls within this zone of reasonable disagreement. *Id.* at 822.

## B. The commercial contracts

Both commercial contracts have the identical operative language. Each commercial contract required the deposit of $12,990 in earnest money; however, of that total, $5,000 was deposited with the title company and the remainder was paid directly to the builder.

Section 7 of the commercial contracts addresses the property condition and

5

the feasibility period:

A. Present Condition: Buyer accepts the Property in its present condition except that Seller, at Seller's expense, will complete the following before closing –

B. Feasibility Period: Buyer may terminate this contract for any reason within 45 days after the effective date (feasibility period) by providing Seller written notice of termination. (Check only one box.)

[X] (1) If Buyer terminates under this Paragraph 7B, the earnest money will be refunded to Buyer less $ 500.00 that Seller will retain as independent consideration for Buyer's unrestricted right to terminate. Buyer has tendered the Independent consideration to Seller upon payment of the amount specified in Paragraph 5A to the title company. The independent consideration is to be credited to the sales price only upon closing of the sale. If no dollar amount is stated in this Paragraph 7B(1) or if Buyer falls to deposit the earnest money, Buyer will not have the right to terminate under this Paragraph 7B.

The commercial contracts contain no other unrestricted right to terminate or receive a substantial return of the earnest money on termination or default. The commercial contracts contain default provisions as follows:

If Buyer fails to comply with this contract, Buyer is in default and Seller, as Seller's sole remedy(ies), may terminate this contract and receive the earnest money, as liquidated damages for Buyer's failure except for any damages resulting from Buyer's inspections, studies or assessments in accordance with Paragraph 7C(3) which Seller may pursue[.]

. . . .

[I]f Seller fails to comply with this contract, Seller is in default and Buyer may (1) terminate this contract and receive the earnest money, less any independent consideration under Paragraph 7B(1), as liquidated damages and as Buyer's sole remedy . . . .

The commercial contracts also state "This contract contains the entire agreement of the parties and may not be changed except in writing."

## C. Modification

The buyers do not dispute the validity or enforceability of the commercial contracts. They also do not dispute the commercial contracts contain no provision for the return of earnest money outside the feasibility period or the upgrade costs. Instead, the buyers argued at trial (and here) that the builder, through its broker, agreed to return those costs and, therefore, either created a new contract or modified the commercial contracts.

The buyers' agent, Zhang, emailed the broker for the builder in October 2017, stating that the buyers "decided to back out from our purchasing contract and are seeking full refund of earnest money and prepaid upgrade money." The broker who represented the builder in the transaction responded to the buyers request to terminate as follows:

> Jane,
>
> Yesi will email you the termination documents tomorrow morning. They will include the deduction of the 500 dollars for each contract and also the developer did not allow any of the upgrade money to be returned. I was hoping you would reconsider moving forward with the purchase of the office after you visited with Mike Evenson. I'm sorry that the upgrades money is not refundable. Yesi will email you all the documents for review tomorrow.

Responding to the broker's email, Zhang reiterated via email that the buyers were backing out and sought a "full refund of upgrade money."

## D. Applicable law

To recover on their breach-of-contract claims, the buyers had to prove: (1) the existence of a valid contract; (2) the buyers performed or tendered performance as the contract required; (3) the builder breached the contract by failing to perform or tender performance as the contract required; and (4) the

buyers sustained damages as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018).

The following elements are required for the formation of a binding contract: (1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 555–56 (Tex. App.—Houston [14th Dist.] 2002, no pet.). A "meeting of the minds" is "merely a mutuality subpart of the offer and acceptance elements." *WTG Gas Processing, L.P. v. ConocoPhillips Co.*, 309 S.W.3d 635, 643 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (internal quotation omitted). "Questions of contract formation must be resolved on objective standards, based upon the meaning reasonably conveyed by the parties' actions and words rather than their uncommunicated subjective intentions." *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 73 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

"To be enforceable, a contract must address all of its essential and material terms with 'a reasonable degree of certainty and definiteness.'" *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (quoting *Pace Corp. v. Jackson*, 284 S.W.2d 340, 345 (1955)). "The material terms of the contract must be agreed upon before a court can enforce the contract." *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). "[A] contract must at least be sufficiently definite to confirm that both parties actually intended to be contractually bound." *Fischer*, 479 S.W.3d 231, 237 (citing *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000)). Where an essential term is open for future negotiation, there is no binding contract. *T.O. Stanley Boot Co.*, 847 S.W.2d at 221. Whether an agreement is legally enforceable is a question of law.

*Yazdani-Beioky v. Sharifan*, 550 S.W.3d 808, 823 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

A contract modification must satisfy all the essential elements of a contract. *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986). There must be both a meeting of the minds and new consideration to support the modification. *Id.*

There is no dispute that the commercial contracts are enforceable contracts. However, the buyers asserted either a new agreement or a modification to the commercial contracts.[3]

### E.     There was no new agreement or modification

Here, there was a series of emails between Zhang and the builder's broker. Zhang's email proposed a new agreement and terms that the entire contract be cancelled and all earnest and upgrade money be returned to the buyers. The broker's email did not accept those terms. Instead, the broker proposed new terms on behalf of the builder: that the upgrade monies would not be refunded, but otherwise implied that the builder would agree to return the earnest monies. Zhang rejected this proposal and again reiterated her demand that the buyers get a full refund of all monies paid (less the $500 fee referenced in the commercial contracts).

Standing alone, none of the referenced emails between the broker and Zhang present evidence of any mutual agreement to terms sufficiently definite to be enforceable. Because multiple documents can together constitute an agreement, we also consider the email correspondence between Zhang and the broker as a whole. *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 840 (multiple writings may comprise contract "even if the parties executed the instruments at different times and the

_____

[3] We do not address statute of frauds because the builder did not plead the affirmative defense in the trial court. *See* Tex. R. Civ. P. 94.

instruments do not expressly refer to each other."). However, the email correspondence as a whole reflects no agreement or meeting of the minds to which the parties agreed. At best, the email correspondence reflects proposed terms from both parties that were never mutually agreed on. *See Copano Energy, LLC v. Bujnoch*, 593 S.W.3d 721, 730 (Tex. 2020) ("the December 7 e-mails themselves reflect no such intent to be bound by their terms . . . nor does any other writing proffered by the Landowners").

Emails from both Zhang and the broker further refer to the creation and distribution of "termination paperwork" or "termination documents" and use the future tense[4] reflecting that neither agent intended for their communications to constitute the agreement. *E.g.*, *Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 778 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("Writings that contain 'futuristic' language are insufficient to confirm that a contract or promise is already in existence."); *Columbia/HCA of Houston, Inc. v. Tea Cake French Bakery & Tea Room*, 8 S.W.3d 18, 21 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (letter constituting "initial starting point for the negotiations" could not "constitute a binding written agreement").

In opposition, the buyers also rely on proposed amendments prepared by the builder (or its broker) that would return the earnest money paid by the buyers. These unsigned, proposed amendments do not reflect agreement as to the "material terms of the contract." *T.O. Stanley Boot Co.*, 847 S.W.2d at 221. Rather, they present potential modification terms.

In their appellate briefing, the buyers also refer to a document addressing an

---

[4] As an example, the broker's email to Zhang states in relevant part: "Yesi *will* email you the termination documents tomorrow morning. They *will* include the deduction of the 500 dollars for each contract and also the developer did not allow any of the upgrade money to be returned. . . . Yesi *will* email you all the documents *for review tomorrow*." (emphasis added).

amendment to the commercial contract with Wang that proposed to provide a credit of $3,180 against the sale price to Wang for upgrades that she canceled or removed. The buyers suggest that the fact the builder allowed Wang to remove some of her upgrades and applied the credit towards the closing purchase price was evidence that the upgrade costs *could be canceled and refunded*. The buyers do not address how the language in the commercial contracts stating upgrade costs were "considered nonrefundable," to which the buyers agreed, was modified or eliminated. Instead, the buyers argue the term "nonrefundable" is ambiguous because it does not state when the upgrade costs became nonrefundable.[5] We disagree. The term "nonrefundable" is not ambiguous. *Black's Law Dictionary* defines the term as "[i]ncapable of being paid back; not returnable for any reason." *Nonrefundable*, *Black's Law Dictionary* (12th ed. 2024). Nothing in the commercial contracts reflects that the term "nonrefundable" was intended to be modified or limited by any date or time period. Therefore, without ambiguity, there is no need to turn to parol evidence and consider the conduct or subjective intent of the parties. *See David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) ("An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports."). That the buyers received no value for the upgrade costs or whether the upgrades were "custom" or not is an equitable argument, but is not evidence of contract modification.

We conclude the email correspondence between Zhang and the broker did not constitute an enforceable agreement or contract modification obligating the builder to return the earnest money and upgrade costs paid by the buyers. Although

---

[5] Buyers maintain that the conduct of the parties reflects that the term "nonrefundable" in the commercial contracts was interpreted by the parties to mean that "the funds for upgrades became nonrefundable upon installation of the upgrades by the builder."

11

there were undisputed amendments to the commercial contracts that do not speak to the issues in this appeal, the buyers produced no evidence of an enforceable agreement that provided the buyers with an unrestricted right to terminate the contract, or obligated the builder to return the earnest money paid by the buyers, or refund the upgrade costs "considered nonrefundable."

We sustain points of error one, two, three and four. Because of our disposition of these issues, we need not address the builder's remaining issues. Tex. R. App. P. 47.1.

### III.  CONCLUSION

Having sustained points of error one, two, three and four, we reverse the judgment of the trial court and render judgment that the buyers take nothing by their claims against the builder.


/s/    Charles A. Spain
Justice


Panel consists of Chief Justice Christopher and Justices Spain and Poissant.